**John E. Burns Lumber Company, Appellee, v. W. J. Reynolds Company et al. On appeal of South Side Lumber Company, Appellant.**

### Gen. No. 14,481.

1. MECHANIC'S LIENS—*right to rely upon statement.* A statement under section 22 of the Mechanic's Lien Act is made to bring home to the contractor and to the owner notice of who were furnishers of work and material under the subcontract, and the owner has a right to rely upon such statement as being true.

2. MECHANIC'S LIENS—*what practice prevails.* While a mechanic's lien proceeding is a statutory proceeding, in derogation of the

common law wherein a lien claimant is wholly dependent upon strict compliance with the statute for a lien, and while the substantive principles of equity are totally inapplicable in furtherance or support of the statutory provisions in order to establish such statutory creation, yet, under the statute, the practice and procedure in these lien suits is according to the practice and procedure in chancery.

3. MECHANIC'S LIENS—*when exception not necessary.* In a mechanic's lien proceeding it is not necessary, in order to save a point arising from a total absence of evidence to sustain the theory and the allegations of the bill, to take any exceptions before the chancellor.

4. MECHANIC'S LIENS—*who necessary party.* In a proceeding to which those who have furnished materials to a subcontractor seek liens, it is necessary to the granting of the relief sought that the actual subcontractor be made a party defendant.

5. EVIDENCE—*effect of leading questions.* The probative value of a witness's testimony is very much lessened where obtained by leading questions which are so put that the witness merely assents to or dissents from a statement or assertion of an examining counsel put with such vocal inflection as to be a question.

6. PLEADING—*proof and evidence to correspond.* A party cannot make one case by his pleadings and a different case by his evidence and yet recover. Parties cannot avail themselves of a ground of complaint or defense not set up in a pleading, even though it appears in the evidence.

7. CHANCERY—*power to relieve from stipulations.* It is within the power of the court of chancery to relieve counsel from stipulations inadvertently made in the progress of a cause.

Mechanic's lien. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and remanded. Opinion filed May 11, 1909. Rehearing denied May 28, 1909.

ROBERT F. KOLB and JOHN E. CRAWFORD, for appellant.

WILLIAM S. CORBIN and HOLDEN & BUZZELL, for appellees; WILLIAM H. HOLDEN, of counsel.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

On December 29, 1906, the John E. Burns Lumber Company, a corporation, filed its bill of complaint·in

358   Appellate Courts of Illinois.

·John E. Burns Lumber Co. v. W. J. Reynolds Co., 148 App. 356.

the Superior Court of Cook county, to establish and have enforced a mechanic's lien upon certain real property of John W. Bradshaw. On December 30, 1907,·a final decree was rendered whereby the chancellor decreed mechanic's liens in favor of the complainant for $1,468.92; in favor of the Schaller-Hoerr Company, a corporation, an intervening petitioner, for $603.07; and in favor of William T. Waterstraat, another intervening petitioner, for $251.67. The decree, in addition, includes allowances for solicitor's fees of $200 to complainant, $75 to the Schaller-Hoerr Company and $75 to Waterstraat, which amounts are taxed as costs. The decree denies relief to Thomas Nicholson, the contractor, and to South Side Lumber Company, a corporation, two intervening lien petitioners. Upon the entry of the decree the South Side Lumber Company prayed for and was allowed an appeal. The cause is now before this court upon that appeal. John H. Bradshaw, the owner, has assigned cross-errors. Besides those named the William J. Reynolds Company, a corporation, sub-contractor, Charles F. Batchelder, owner and holder of a principal note and coupons secured by a trust deed upon the property, William A. Jeffries, trustee, and William H. Holden, successor in trust, in that trust deed, were made parties defendant. The property involved is a six story and basement store and warehouse building on the southwest corner of Franklin street and Couch place, in Chicago, Illinois.

Bradshaw contracted with Nicholson to have the latter put up that six-story store and warehouse building on the premises. Nicholson sublet the carpenter work, as the bill of complaint alleges, to "W. J. Reynolds Company, a corporation duly organized and existing under and by virtue of the laws of the State of Illinois, for the furnishing of the materials and performance of the work and labor for the carpenter work on said building." Similar allegations, in respect to the carpenter work, are contained in the two intervening petitions of the Schaller-Hoerr Company

CHICAGO—FIRST DISTRICT—MAY, 1909. 359

John E. Burns Lumber Co. v. W. J. Reynolds Co., 148 App. 356.

and Waterstraat. The owner, who, so far as the sub-
contract for the carpenter work was concerned, was an
outsider and not in privity of contract, contends that
there is no evidence in the record of any contract with
the W. J. Reynolds Company, but that the evidence re-
lating to the contract for the carpenter work tends to
show that such contract was made with W. J. Reynolds,
personally and individually. The only witnesses who
testified, and the only ones who, apparently, had
any knowledge on the subject of the making of that
contract were W. J. Reynolds and Thomas Nicholson.
Reynolds' testimony is, clearly, only open to the con-
struction that this contract was one between him, per-
sonally, and Thomas Nicholson. While it is true that,
in the taking of his evidence, the W. J. Reynolds Com-
pany is at times referred to and that in questions, fol-
lowing such references, the use of the pronoun "you"
might, in the mind of examining counsel, have related
to that corporation, if there be such an one, the impu-
tation of such meaning to the witness would squarely
conflict and be totally inconsistent with other testi-
mony and acts of the witness. With the witnesses at
hand and the evidence so readily obtainable, we fail
to see why the proof was not made more clear as to
whom Nicholson made this sub-contract with, and
whether or not such corporation as the W. J. Rey-
nolds Company existed. When Reynolds was on the
witness-stand he was asked: "Q. Do you remember
what —— —— *You* had a contract with Thomas Nichol-
son, I believe? A. Yes." Upon further questioning
he testified that the contract was a verbal one; that
he was to be paid $11,624 by Thomas Nicholson, under
the contract, and that he completed the contract.
Furthermore, on August 30, 1906, Reynolds made a
sworn statement bearing that date, addressed to
Thomas Nicholson, the contractor, purporting to be a
statement of the names and addresses of all parties hav-
ing contracts "for specific portions of the work or
for material," upon this building, under him. In that
sworn statement he states that the furnishing of work

360      APPELLATE COURTS OF ILLINOIS.

John E. Burns Lumber Co. v. W. J. Reynolds Co., 148 App. 356.

and material by these parties, under contract with him, was in pursuance of "my contract with you" for the carpenter work on the building in question. The statement is signed by him in his own proper name and, as we have said, sworn to by him. No such corporation as the W. J. Reynolds Company is in any way alluded to therein. The statement is consistent only with the view of Reynolds' testimony that the contract for the carpenter work was between Nicholson and W. J. Reynolds and, consequently, inconsistent with the view of his testimony that the contract was between Nicholson and the W. J. Reynolds Company. The statement was made under Section 22 of the Mechanic's Lien Act to bring home to the contractor, and to the owner, notice of who were furnishers of work and material under the subcontractor and, ·in order to be valid and have effect, must necessarily be made by the subcontractor. In this particular instance, as appears from the evidence, it was made to obtain money from the contractor and owner and money was, in fact, obtained thereby. The making of this statement was a most deliberate act by Reynolds. It may not be directly material at this time, but it may be suggested that furnishers of labor and material to contractors and subcontractors, and not the owner, are liable to be the losers by untrue statements made by contractors and subcontractors, where such furnishers have failed to give notice. It appears to be the general policy of the lien law that the owner shall have the right to rely upon these statements being true, and that he shall not suffer by their falsity. A contrary policy would, of course, very much hamper contractors and subcontractors in obtaining payments from owners and in obtaining contracts. An owner constructing a large, extensive building would find it very difficult to verify the truth of such statements by ascertaining the amounts due to and the names of all employes and material furnishers of the contractors and subcontractors, should he be required to do so in order to protect himself, while it is, .com-

paratively, an easy matter for subcontractors and furnishers of labor and material to protect themselves by notice under the law. Thus, upon a balancing of the hardships and inconveniences between the owner and those to be protected it appears to be more equitable that in case of loss, through an untrue statement, the loss should fall, as appears to be the policy of the law, upon the material furnisher who has failed to give timely notice.

In respect to the testimony of the witness Nicholson we must first remark that the probative value of a witness' statement is very much lessened when obtained by means of leading questions which are so put that the witness merely assents to or dissents from a statement or assertion of an examining counsel put with such vocal inflection as to be a question. It is the experience of all of us that frequently a witness, not trained as lawyers are to watch closely and to carefully analyze the precise drift of language used, misses the precise point and purport of questions and assents or dissents as to something not, in reality, asked. This, of course, should not, but it does happen; hence we often find inconsistencies in evidence where proper questions would have developed nothing but consistency. In this record we find many serious violations of the rules of evidence in the respect referred to and an unsatisfactory condition in Nicholson's testimony on the subject of who the carpenter contractor was. He stated the contract was a verbal one, made by telephone. He was asked: "Q. Did you have the contract for the furnishing of any materials in the performance of any work, on this building, with the W. J. Reynolds Company? A. Yes." "Q. About what time with reference to the date of this contract, 'complainant's Exhibit 34' was your contract with the W. J. Reynolds Company made and entered into? A. There was no written contract with Mr. Reynolds, I got a bid from Mr. Reynolds before putting in my proposal on this work." "Q. About what time did

you receive this verbal proposal from the Reynolds Company, Mr. Nicholson? A. Probably two or three weeks before I put in my bid [to the owner]. No, about a week." "Q. What was this proposal, this verbal proposal you received from the Reynolds Company over the telephone? A. He was to complete the carpenter work." "Q. What did you later say? A. I accepted his proposal to do that work." Persistently counsel sought to lead the witness into acquiescing in counsel's statement that the carpenter contract was with the W. J. Reynolds Company, and almost as persistently the witness replied, in substance, that the contract was with him, W. J. Reynolds. There was, in the answers, a continuous, sort of subconscious, avoidance of counsel's subtle assertions. Nicholson, it also appears, made written statements to the owner. As he was the contractor, these statements were made in actual or attempted compliance with section 5 of the lien law. Upon his direct examination in his own behalf, he testified that before any certificate, showing him to be entitled to any payment, was made out to him by the architects he made a statement as to who his subcontractors were and the amounts of their contracts. This statement was, therefore, made before any money was paid him, and it was delivered to the architects, who were acting for the owner. It was shown to be lost and therefore not introduced in evidence. It was also shown to have been subscribed and sworn to before a notary public. Nicholson testified to its contents and as to the subcontractors named therein and the amounts of their contracts and amounts due and to become due each for labor and material furnished. He testified its contents were the same as the contents of another statement he subsequently made to the architects, under date of August 31, 1906, in the form of a letter and not sworn to. This latter statement was introduced in evidence and shows as subcontractor for the carpenter work W. J. Reynolds—not the W. J. Reynolds Company—and that the amount of the contract was $11,624 less $800.

As the first payments made by the owner to Nicholson and subcontractors, were made on July 2, 1906, which amounted to $8000, the lost statement must have been made at or before that time.

On September 1, 1906, a letter was written by Nicholson to the architects and in that letter he says: "In my letter to you, yesterday, I gave you the amount of my contract with W. J. Reynolds in full. I note there is to be a deduction of $800 from this amount for stairs left out," etc. We have carefully discussed and considered the question whether, upon the evidence in this record, it must be regarded that Nicholson made the subcontract for the carpenter work with W. J. Reynolds or with the W. J. Reynolds Company, and we have come to the conclusion that the evidence shows the contract to have been made with W. J. Reynolds.

We have not failed to observe that after the trouble arose Nicholson, under date of December 31, 1906, for the purpose of obtaining the final payment upon the contract from the owner, made a statement under oath that all the bills incurred by him, in connection with the building, were paid, except "W. J. Reynolds Co." $1,027.84 and another for $95. We have also observed that during a period beginning with July 24, 1906, and ending with November 23, 1906, five vouchers for carpenter work upon the building were issued by the architects, Hill & Woltensdorf, to W. J. Reynolds Company, for an aggregate sum of $10,200. These vouchers were all paid by the owner in due course of business. In the course of Nicholson's testimony, when the point as to who was the carpenter contractor was not directly in question, various statements appear which may be regarded as being, inconsistently, to the effect both that the contractor was Reynolds and that the contractor was the W. J. Reynolds Company. We have further observed that in the course of the hearing before the master all parties, having certain purposes in view, as for instance that certain contracts were

364     Appellate Courts of Illinois.

John E. Burns Lumber Co. v. W. J. Reynolds Co., 148 App. 356.

completed and that certain amounts were due, joined in a verbal stipulation to that effect and in such stipulation it appears in the verbiage thereof to be assumed that the W. J. Reynolds Company was the carpenter contractor. From the evidence, altogether, it seems that during the earlier period of the transactions the carpenter contractor was more consistently regarded to be W. J. Reynolds. Perhaps the fact is that he did business under the name and style of W. J. Reynolds Company as a *de facto* corporation and regarded himself as its president. At all events, the burden of proof was upon the complainant and intervening lien claimants to show, by a preponderance of the evidence, that the carpenter contractor was the W. J. Reynolds Company and in that regard they have totally failed.

The rule is fundamental that a party cannot make one case by his pleadings and a different case by his evidence and yet recover. Parties cannot avail themselves of a ground of complaint or defense not set up in a pleading, even though it appears in the evidence. Purdy v. Hall, 134 Ill. 298; Stokes v. Riley, 121 Ill. 166, 172; Condit v. Stevenson, 13 Ill. App. 417; Johnson v. Foreman, 16 Ill. App. 632; Neuberger v. Rountree, 18 Ill. App. 610; Klemme v. Klemme, 37 Ill. App. 54; Brant v. Hutchinson, 40 Ill. App. 576, 582; Gutsch Brg. Co. v. Fischbeck, 41 Ill. App. 400; Jewett v. Sweet, 178 Ill. 96, 101; Kehm v. Mott, 187 Ill. 519, 522. "The theory of a bill must be made to appear from the allegations in it." Quinn v. McMahon, 40 Ill. App. 593, 600.

The legislature adopted the practice and procedure in chancery, so far as not inconsistent with anything contained in the Mechanics' Lien Act, rather than the more inapplicable procedure of the common law courts, to be used in the enforcement of mechanics' lien suits. Section 12 of the Mechanics' Lien Act, which relates to practice and procedure in the prosecution of lien proceedings, provides for the exercise of the powers and jurisdiction of the chancery forum, and the rules

of that forum, as to practice and procedure, in the prosecution of lien proceedings. This applies both before the chancellor and upon review. Therefore, while a mechanics' lien proceeding is a statutory proceeding, in derogation of the common law wherein the lien claimant is wholly dependent upon strict compli- ance with the statute for a lien and while the substan- tive principles of equity are totally inapplicable in furtherance or support of the statutory provisions in order to establish such statutory creation, yet, under the statute, the practice and procedure in these lien suits is according to the practice and procedure in chancery. It was therefore unnecessary, in order to save the point arising from a total absence of evidence to sustain the theory and the allegations of the bill, to take any exceptions before the chancellor. Swift v. Castle, 23 Ill. 132 (*209); Smith v. Newland, 40 Ill. 100; C. A. W. Co. v. C. M. L. I. Co., 57 Ill. 424, 434; Miller v. Whelan, 158 Ill. 544, 552. In chancery an appeal is, in effect, a retrial, *de novo,* of the case, upon the record of the proceedings before the chancellor. Dunnom v. Thomsen, 58 Ill. App. 390, 395; Flaherty v. McCormick, 123 Ill. 525, 533. If there is competent evidence in the record sufficient to sustain the decree, it must be affirmed; if not, it must be reversed. Tre- leaven v. Dixon, 119 Ill. 548, 551; Gogan v. Burdick, 182 Ill. 126; Davis Paint Co. v. Metzger Paint Co., 188 Ill. 295. There is not, in this record, sufficient compe- tent evidence to sustain the allegations of the bill in respect to the subcontract.

The complainant, John E. Burns Lumber Company, the intervening petitioners, Schaller-Hoerr Company and William T. Waterstraat, who were allowed liens, and the intervening petitioner, South Side Lumber Company, who was not allowed a lien, are all furnish- ers of material for the subcontract and, being of that class, they, as they are obliged to do, claim liens under section 22 of the Mechanics' Lien Act. They con- tracted with and trusted the subcontractor and,

366    APPELLATE COURTS OF ILLINOIS.

John E. Burns Lumber Co. v. W. J. Reynolds Co., 148 App. 356.

through that relation, they claim their lien upon the property. Should they eventually establish a right to liens and thereby the amount the owner would be obliged to pay for the carpenter work be made to exceed the contract price, a right to be reimbursed by the subcontractor, if not by the original contractor, would arise. It is, therefore, of the highest importance that the actual subcontractor, a party in interest and under the lien law a necessary party as such, be a party to this proceeding. The owner's right to reimbursement would arise because of his being compelled, in order to protect his property, to pay out money which it was primarily the duty of another to pay. Chudnovski v. Eckels, 232 Ill. 312, 317, and Chicago v. P. C. C. & St. L. R. R. Co., 146 Ill. App. 403.

It appears that on March 19, 1906, Nicholson contracted with the owner to furnish "the material, labor, tools, machinery, etc.," and to build and complete "all the General Work" of the building in question, to be completed on or before September 1, 1906. In that contract Bradshaw, the owner, as the consideration, agreed to pay Nicholson $45,300 and, in addition to that sum, $1104.39 became due the contractor for extras. The building was completed about November 1, 1906. At the time of the institution of this proceeding, payments had been made by the owner so that only $2208.80 was due the contractor and, through the owner or his agents, the architects, payments had been made by the contractor to the subcontractor so that there was then only $1055.53 due to the carpenter subcontractor from the contractor. At the same time there was due the furnishers of material, John E. Burns Lumber Company, the Schaller-Hoerr Company, William T. Waterstraat and the South Side Lumber Company, under their contracts with the subcontractor, an aggregate of $4892.52, exclusive of interest. This aggregate includes $1281.84 disallowed to the South Side Lumber Company and $1405.15 disallowed to the John E. Burns Lumber Company. Thus it appears that there was

due to the material furnishers from the subcontractor more than there was due him from the contractor and even more than there was due from the owner to the contractor. Hence it was, in this particular case, of the greatest importance, both to the owner and to the contractor, that the subcontractor should have been made a party and shown, by a preponderance of the evidence, to be the subcontractor.

Complaint is made by the owner because there was taxed against him $350 for fees for the solicitors of the successful lien claimants under a provision in the Mechanics' Lien Act which has been held unconstitutional by our Supreme Court in Manowsky v. Stephan, 233 Ill. 409. The opinion in that case was not published until some time in April, 1908. According to that decision there is no warrant in law for allowing attorneys' or solicitors' fees to successful lien claimants and there is no inherent justness in the imposition of any such penalty upon an owner, whatever may be said in that respect with reference to the contractor or subcontractor who defaults in his obligation. It appears very much like enforcing a collection from one of what may be justly due from another. However, on the part of the lien claimants it is said that in this particular case the allowance has been agreed upon. That is disputed. The verbal stipulation, the interpretation of which is in contention, was made in May, 1907, before the above mentioned decision of the Supreme Court was rendered. It may therefore be regarded as inadvertently made, although the lien claimants' view of the stipulation should be regarded as the true one. The chancellor may, upon application, relieve solicitors from stipulations in a cause inadvertently made and will always do so when it is just that it be done. As this cause is remanded, it is unnecessary for us to pass upon the effect of the stipulation in question.

There are other questions in this record with reference to the lien claims, but in view of the state of the

record, as heretofore shown, upon the question of who was the subcontractor and whether, in that respect, there has been a failure to bring in a necessary party, we do not pass upon those other questions. The decree of the chancellor is reversed and the cause remanded for such further proceedings as may not be inconsistent with what we have said herein.

The costs of this appeal will be paid by the lien claimants in whose favor a decree was rendered, John E. Burns Lumber Company, Schaller-Hoerr Company, and William J. Waterstraat in the proportions of 14/22 by the Lumber Company, 6/22 by the Schaller-Hoerr Company and 2/22 by Waterstraat.

*Reversed and remanded.*