THE KNICKERBOCKER ICE COMPANY *vs.* HALSEY BROS. COMPANY, Appellee.—(THE NOLLAU & WOLFF MANUFACTURING COMPANY, Appellant.)

*Opinion filed February 21, 1914—Rehearing denied April 8, 1914.*

1. MECHANICS' LIENS—*section 5 of Mechanic's Lien act is not limited to contractor's first notice of amount due sub-contractors.* Section 5 of the Mechanic's Lien act, (Laws of 1903, p. 230,) requiring the original contractor to give, and the owner to require, a sworn statement of the amounts due sub-contractors, does not contemplate that only one sworn statement shall be given but that sworn statements shall be made from time to time when payments are made to the original contractor.

2. SAME—*the owner may rely upon truth of contractor's sworn statement, in absence of notice.* Where a sub-contractor serves no notice upon the owner as to the amount due him from the original contractor the owner has a right to rely upon the original contractor's sworn statements in that regard, and he will be protected in his payments, as against the sub-contractor, if he has no notice from any source that the sworn statements are false.

3. SAME—*what is sufficient delivery of statement to the owner.* If the architect is acting as the owner's agent under a building contract, a delivery to the architect of sworn statements by the original contractor showing the amount due the sub-contractors, is, in law, a delivery of such statements to the owner.

262 — 16

242 Knickerbocker Ice Co. v. Halsey Co. [262 Ill.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

ADAMS, CREWS, BOBB & WESCOTT, (JAMES B. WESCOTT, of counsel,) for appellant.

DONALD L. MORRILL, (ROBERT W. MILLAR, of counsel,) for appellee.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

The Knickerbocker Ice Company filed its bill of complaint in the superior court of Cook county to foreclose a mechanic's lien against certain property owned by the Halsey Bros. Company in the city of Chicago. Afterwards the Nollau & Wolff Manufacturing Company by leave of court became a party defendant and filed an intervening petition claiming a lien for a balance of $1426.23 due it for millwork furnished in the erection of a building on said premises. There is no controversy over the facts in the case. On April 22, 1909, the Halsey Bros. Company let the contract for the carpentry work on said building to Paul F. P. Mueller, who was to furnish all labor and material necessary for the completion of that work for $2700. Mueller contracted with the Nollau & Wolff Manufacturing Company to furnish the millwork required to carry out his contract, for $1550.50. On June 10, 1909, Mueller furnished to the architect in charge of the construction of the building a sworn statement showing that there was due the Nollau & Wolff Manufacturing Company for millwork $150 and that $1400 was to become due under his contract with that company. Acting on this statement the Halsey Bros. Company made a payment of $300 to Mueller. Thereafter, from time to time, Mueller furnished the archi-

tect with sworn statements purporting to show the amount then due the Nollau & Wolff Manufacturing Company and the amount to become due under the contract for the mill-work, and on each occasion the Halsey Bros. Company made a payment to Mueller but retained a sufficient sum from the contract price to pay the sums due and to become due the Nollau & Wolff Manufacturing Company, as shown by these sworn statements. The last of these statements was furnished December 7, 1909, and showed that $900 was due the Nollau & Wolff Manufacturing Company and that nothing was to become due. At the time this statement was furnished, the Halsey Bros. Company had paid to Mueller all except $911 of the contract price for the carpentry work. The Nollau & Wolff Manufacturing Company served no notice upon the Halsey Bros. Company of the amount due or to become due under its contract with Mueller, and the only information received by the Halsey Bros. Company with reference to the contract and the status of the accounts between Mueller and the Nollau & Wolff Manufacturing Company was that obtained from the sworn statements furnished by Mueller to the architect. All the sworn statements except the first, so far as they purported to show the sums due and to become due the Nollau & Wolff Manufacturing Company under its contract with Mueller, were false, and when the last of these statements was furnished there was due the Nollau & Wolff Manufacturing Company the sum of $1426.23 instead of $900, the latter being the amount shown by the sworn statement to be due. The superior court held that the lien of the Nollau & Wolff Manufacturing Company only attached to the extent of $911, being the balance remaining unpaid on the contract between the Halsey Bros. Company and Mueller, and entered a decree accordingly. The Nollau & Wolff Manufacturing Company prosecuted an appeal to the Appellate Court for the First District, where the decree of the superior court was affirmed. The

Appellate Court granted a certificate of importance, and the Nollau & Wolff Manufacturing Company has prosecuted a further appeal to this court.

The principal question presented upon this appeal is whether the Halsey Bros. Company, under the provisions of the Mechanic's Lien act, had a right to rely upon the sworn statements made to the architect in determining what amount should be retained from the contract price in order to protect the property from the liens of sub-contractors furnishing labor and material to the original contractor.

Section 5 of the act to revise the law in relation to mechanics' liens (Laws of 1903, p. 230,) provides: "It shall be the duty of the contractor to give to the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect or superintendent, shall pay or cause to be paid to said contractor or to his order any moneys or other consideration, due or to become due such contractor, or make or cause to be made to such contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names of all parties furnishing materials and labor, and of the amounts due or to become due each. Merchants and dealers in materials only shall not be required to make statements herein provided for."

Appellant contends that this section contemplates but one sworn statement to be given the owner by the contractor, and that after this statement has been given the owner must at all times, at his peril, retain a sufficient sum to pay all sub-contractors the amounts shown by such statement to be due and to become due. Appellee, on the other hand, contends, and the superior and Appellate Courts held, that this section authorizes the owner to make payments to the contractor, from time to time, upon sworn statements being furnished by the contractor showing the amounts due and to become due sub-contractors, and that the owner will be protected in making payments to the contractor

upon such statements unless he has notice that the statements are false. The contention of appellant cannot be sustained. Said section 5 does not expressly limit a contractor to one sworn statement to be made to the owner, and from a consideration of the various provisions of the whole act such a construction cannot fairly be given to this section. When a contractor makes his sworn statement, either voluntarily or at the request of the owner, at the time the first payment is due under his contract, he makes it in accordance with the conditions as they then exist. Those conditions may change before a second payment becomes due. New sub-contracts may have been entered into in the meantime or payments may have been made upon sub-contracts existing at the time the first payment was made. In order to be apprised of the exact situation at the time any payment is demanded by and made to the contractor, whether it be the first payment made under the contract or any subsequent payment, the owner is entitled, under said section 5, to require, and it is the duty of the contractor to make, a statement showing the situation as it then exists. If any sub-contractor is not satisfied to rely upon the contractor in the making of these statements and to abide by the statements as made, it is his privilege, under the statute, to serve an independent notice upon the owner, of the amount due or to become due under his sub-contract, which shall bind the owner notwithstanding any statement made by the contractor. In the absence of any such notice served by the sub-contractor the owner has the right to rely and act upon the sworn statements made to him under said section 5 by the contractor, unless he knows, from any source, that the same are false. In this case the sub-contractor refrained from serving notice upon the owner and thereby elected to abide by the sworn statements made by the contractor. That all of these statements, subsequent to the first one made, were false does not affect the liability of the owner. Having no

knowledge of the falsity of the statements the owner had the right to act upon them, and the sub-contractor must look to the contractor for any balance due on its claim over and above the amount withheld by the owner pursuant to the sworn statements made.

It is further urged that the statements of the contractor were not delivered to the owner. It appears that these statements were delivered to the architect, who, as the evidence shows, was acting as the agent of the owner. This was a delivery to the owner in compliance with the statute.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*