William F. Sanaghan, d/b/a Local Wall and Floor Tile Company, Plaintiff, v. Lawndale National Bank, Trustee Under Trust No. 4075, Kavanagh Construction Company, Inc., and Investors Savings and Loan Association, Defendants and Counter-Defendants-Appellees, and Sammy Grant, d/b/a Sammy Grant Drywall Company, Defendant and Counter-Plaintiff-Appellant.

Gen. No. 51,090.

First District, Third Division.

November 24, 1967.

Ross and East, of Chicago (James East and Warren R. Ross, of counsel), for appellant.

Thomas J. Walsh, A. E. Peterson, Lawrence Sulzbacher, Theodore C. Argiris, and Marvin L. Tratner, of Chicago, for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a summary decree dismissing a counterclaim for the enforcement of a mechanic's lien by Sammy Grant, doing business as Sammy Grant Drywall Company, against property owned by the Lawndale National Bank (Lawndale) as trustee. The issue presented is whether a party may under the provisions of the Mechanics' Lien Act enforce a lien for labor or material furnished to a subcontractor, notwithstanding the fact that the subcontractor had procured payment in full of the contract price by means of a *false* affidavit. Ill Rev Stats, c 82, §§ 1–39 (1965).

The Lawndale National Bank as trustee entered into a contract with Kavanagh Construction Company, Inc., as general contractor to erect a large apartment building on land owned by it in Harvey, Illinois. To finance the construction, Lawndale mortgaged the premises to Investors Savings and Loan Association (Investors). Investors, following customary practice in the construction industry, withheld the mortgage proceeds and disbursed them on behalf of the owner as construction progressed on the building.

On April 30, 1963, Kavanagh submitted to Investors a sworn statement setting forth the names of all subcontractors and the amounts due or to become due to them. The statement showed that the plastering contract (for

which drywall was later substituted) had been let to Lucky Star Decorating, the trade name of one Keith Melhorn, for $6,800. On May 8, 1963, Sammy Grant entered into an oral subcontract with Melhorn, by the terms of which Grant was to furnish drywall construction, labor, materials and tape for the sum of $6,800.

On June 24, 1963, while construction was progressing, a partial payment was made by Investors to Kavanagh, which included $2,800 on account of the drywall contract. Supporting this payout was a partial waiver of lien executed by Melhorn, acknowledging receipt of this amount. On August 1, 1963, Kavanagh requested further progress payments and authorized a final payment to Melhorn in the sum of $4,000. Supporting this payout was the sworn statement of Melhorn setting forth that all material for the performance of the contract had been furnished by Dolton Gypsum Supplies, Inc. and that all labor had been furnished by Lucky Star Decorating. This statement was accompanied by final waivers of lien from both Lucky Star and Dolton Gypsum. Relying upon the sworn statements and the waivers of lien, Investors paid $4,000, completing payments on the drywall contract.

The sworn statement of Melhorn was false in that it omitted the claim of the appellant Sammy Grant. On October 1, 1963, two months after payment had been made to Melhorn, Sammy Grant served on Lawndale, Investors and Kavanagh notice of his claim for lien, stating he completed work on the premises on September 16, 1963, and that there was a balance of $2,800 due him on his agreement with Melhorn. Payment was refused on the ground that full payment of the drywall contract had been made to Melhorn and that prior to the receipt of the notice of Grant's claim, full payment had been made to the general contractor of all moneys due for construction of the building.

Grant's claim for lien is not contractual, but rests entirely on the statute. The statute is comprehen-

sive. It defines the rights and responsibilities of parties generally involved in construction contracts—the owner and his disbursing agent on one side and, on the other, in any project of considerable size, the general contractor, subcontractors and the more numerous class of those performing labor and providing material for the subcontractors. Many or all of these subcontractors and sub-subcontractors may be unknown to and undiscoverable by the owner. The statute recognizes this. Thus section 5 provides that the owner must demand a sworn statement from the general contractor, setting forth the names of all parties furnishing labor and materials and the amounts due or to become due to each, before any payment is made to the contractor.[1] Section 22 provides that any subcontractor shall, as often as requested by the owner, provide a statement of the persons furnishing labor and materials to him and how much is due or to become due to them.[2] Section 32 provides that no payment

[1] "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect or superintendent, shall pay or cause to be paid to said contractor or to his order any moneys or other consideration, due or to become due such contractor, or make or cause to be made to such contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names of all parties furnishing materials and labor, and of the amounts due or to become due each. Merchants and dealers in materials only shall not be required to make statements herein provided for." Ill Rev Stats, c 82, § 5 (1965).

[2] "When the contractor shall sub-let his contract or a specific portion thereof to a sub-contractor, the party furnishing material to or performing labor for such sub-contractor shall have a lien therefor; and may enforce his lien in the same manner as is herein provided for the enforcement of liens by sub-contractors. Any sub-contractor shall, as often as requested in writing by the owner, or contractor, or the agent of either, make out and give to such owner, contractor or agent, a statement of the persons furnishing material and labor, giving their names and how much, if

258

to the contractor shall be regarded as rightfully made as against subcontractors and parties furnishing labor or materials, if made by the owner without exercising the rights and powers conferred upon him by sections 5 and 22. If the subcontractors or persons furnishing labor or materials to them are not satisfied to rely upon the protection afforded by the foregoing sections, then section 24 authorizes direct notice to the owner at anytime after the making of the subcontract and requires such direct notice within 60 days after completion of the work. The sub and sub-subcontractors are given the opportunity to bring their claims to the attention of the owners—that is, by relying on those above them to give notice in the statements required by sections 5 and 22 *or by direct notice.*

■ On the other hand, the owner who complies with the provisions of the statute is protected. Section 21 provides that the owner shall not be required to pay a greater amount for the complete building than provided in the original contract, unless payments are made to the contractor in violation of the rights of other parties to be benefitted by the act. Section 27 provides that the owner shall not be liable to a laborer or subcontractor whose name is omitted from the statements required by sections 5 and 22 *unless previous to his payment to the contractor, he is notified of such claim.*

The appellant Grant, a sub-subcontractor, as disclosed by his pleadings and affidavit in opposition to the motion for a summary decree, made his contract with Melhorn, not the general contractor, and falls within the class of those providing labor or materials to a subcontractor— the class most remote from the owner. His rights to a lien arise by virtue of section 22. The statement required

anything, is due or to become due to each of them, and which statement shall be made under oath if required." Ill Rev Stats, c 82, § 22 (1965).

by this section was requested by Investors acting for the owner and false though it was, it was presented by Melhorn prior to final payment of the drywall contract.

■ ■ Appellant argues that Lawndale and Investors failed to comply with section 5 of the statute by not requiring from the general contractor a current sworn statement prior to making final payment on the drywall contract. He contends that a question of fact exists as to whether the general contractor knew or should have known that Sammy Grant was performing work on the premises, that this knowledge was chargeable to the owner, and that in any event if the general contractor knew of his presence and if the owner had required a current sworn statement, knowledge of his claim would have come to the attention of the owner. He does not contend that either Lawndale or Investors had actual knowledge of his claim prior to final payment on the contract. There is nothing in the Mechanics' Lien Act which can be construed as providing that mere presence of a workman on a job will constitute notice to the owner on which a mechanic's lien may be based. Nor can the knowledge of the contractor be imputed to the owner. They are essentially adverse parties under the statute. Lack of knowledge of the appellant's claim by the owner is conceded here, and the knowledge of the contractor is not a material fact in this dispute.

■ Under the circumstances of this case it does not appear that section 5 placed an affirmative duty on the owner to require a current sworn statement prior to final payment on the drywall contract. The statement required by this section was furnished to Lawndale and Investors on April 30 and it reflected accurately the subcontracts existing on that date. Section 5 simply calls for *a* statement to be made prior to any payment of moneys to the contractor. Appellant's argument would compel us to construe this language as requiring a sworn statement to

be furnished by the contractor before *each* payment. There is no authority to support this construction.

■ The owner is not required under section 5 to obtain more than one such statement. If the appellant was not content to rely on the sworn statement of April 30 showing the interest of Melhorn, his contractor, or upon Melhorn's good faith in making the statement required from him under section 22, the appellant could have given notice directly to the owner at any time after making his contract. He did not do so and no information pertaining to his claim appears to have reached the owner. The rule stated in Berkshire Warehouse Co. v. Hilger & Co., 268 Ill 463, 109 NE 287, is applicable (p 468):

> "A reading of the sections of this statute to which we have referred [Sections 5, 22, 24 and 32] shows clearly that it was intended that the owner should be protected if he used reasonable precautions in following the statutory provisions; that if the contractor's affidavit was in the form required by the statute, even though it was false, the owner was protected, as against sub-contractors, if he had no knowledge or notice of the falsity of the contractor's statement."

Appellant further contends that a party furnishing labor or material to a subcontractor may perfect the lien granted him by section 22 any time prior to the expiration of 60 days after the completion of his contract, and that payment to the subcontractor in reliance upon the latter's affidavit during this period cannot operate to deprive him of his lien. Both the express provisions of the statute and practical considerations operate against this contention. The statute was drawn to give protection and at the same time enable prompt payment to materialmen and workers on the job site. The statements required by sections 5 and 22 should operate to put

the owner on notice and thus protect the materialmen and workers. The inescapable corollary of these provisions in the statutory scheme is that the owner can rely upon the truth of these statements in the absence of other facts indicating their untruth. Thus section 27 provides in part:

"Any payment made by the owner to the contractor after such notice, without retaining sufficient money to pay such claims, shall be considered illegal and made in violation of the rights of the laborers and subcontractors and the rights of such laborers and subcontractors to a lien shall not be affected thereby, *but the owner shall not be held liable to any laborer and subcontractor or other person whose name is omitted from the statement provided for in sections five (5) and twenty-two of this act . . . unless previous thereto or to his payment to his contractor, he shall be notified, as herein provided, by such person of their claim and the true amount thereof.*" (Emphasis added.) Ill Rev Stats, c 82, § 27 (1965).

Section 27 contemplates payment to laborers and materialmen during the 60-day period subsequent to completion of the work. It would be meaningless if it were interpreted in such manner that no payment could safely be made to subcontractors until 60 days after completion of the work, since absolute protection is afforded in any event under section 24 upon expiration of the 60-day period. If security in the payment could not be obtained until the expiration of the 60-day period, it is difficult to see how the financing of such construction could be had. It is common knowledge that the construction industry operates on credit, and this was understood by those who prepared and enacted the Mechanics' Lien Act. Socially and practically, the interpretation argued for by appellant cannot be justified.

Section 27 must mean therefore that payment within the 60-day period can be made by an owner with safety, unless prior to payment he has notice or knowledge of the existence of other claims. Notice must be given either by way of statements under sections 5 and 22 or by independent notice previous to payment, as provided by section 27. In the absence of such timely independent notice, laborers and materialmen must bear the risk of loss from false statements made by contractors and subcontractors. Knickerbocker Ice Co. v. Halsey Bros. Co., 262 Ill 241, 104 NE 665; John E. Burns Lumber Co. v. W. J. Reynolds Co., 148 Ill App 356. As stated in the latter case (p 360):

> "An owner constructing a large, extensive building would find it very difficult to verify the truth of such statements by ascertaining the amounts due to and the names of all employes and material furnishers of the contractors and subcontractors, should he be required to do so in order to protect himself, while it is, comparatively, an easy matter for subcontractors and furnishers of labor and material to protect themselves by notice under the law. Thus, upon a balancing of the hardships and inconveniences between the owner and those to be protected it appears to be more equitable that in case of loss, through an untrue statement, the loss should fall, as appears to be the policy of the law, upon the material furnisher who has failed to give timely notice."

The equitable and practical considerations mentioned in the Burns case are as valid today as when made. Indeed, there is no other construction that can be placed upon the statute which would harmonize those sections which protect laborers and materialmen with those which protect the owners of property.

■ Lawndale and Investors properly exercised their rights and performed the obligations imposed upon them by the Mechanics' Lien Act in securing the sworn statements of the general contractor and the drywall subcontractor. Having had neither notice nor knowledge of the claim of appellant at the time final payment was made on the drywall contract, they are entitled to the protection of sections 21 and 27 of the statute, and the decree is affirmed.

Decree affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.