SEASON COMFORT CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. BEN A. BORENSTEIN COMPANY, Defendant-Appellant and Cross-Appellee (A.A. Advanced Air Systems, Inc., et al., Defendants).

First District (3rd Division)   No. 1—93—1212

Opinion filed September 6, 1995.—Rehearing denied November 27, 1995.

Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, of counsel), for appellant.

John E. Passarelli, of Arlington Heights, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Season Comfort Corp. (Season), is a construction contractor which brought this action against defendants A.A. Advanced Air Systems, Inc. (AA), Jewel Tea Company, Incorporated (Jewel), and Ben A. Borenstein & Company (BABCO), to establish and enforce a lien pursuant to the Mechanics Lien Act (770 ILCS 60/1 (West 1992)) (Act) and to recover money judgments against the defendants. Jewel is the owner of the premises where the construction work was done. BABCO is the general contractor for the project. AA is a subcontractor which engaged Season as its secondary subcontractor.

The trial court entered a judgment in favor of Jewel and against Season. It also entered judgment in favor of Season and against BABCO for $27,618. No judgment was entered with regard to AA. The trial court found, however, that there was no just reason for delaying enforcement or appeal of the judgment. (134 Ill. 2d R. 304(a).) BABCO has appealed, and Season has cross-appealed. We affirm the judgment in favor of Jewel and reverse the judgment against BABCO and enter judgment in favor of BABCO and against Season. We also remand for further proceedings as the trial court may determine.

Jewel is the owner of real property and has offices located at 1955 West North Avenue, Melrose Park, Illinois (the premises). On October 6, 1987, Jewel entered into a written construction contract with BABCO as a general contractor for $1,483,200 to make improvements on the premises. On December 9, 1987, BABCO entered into a written subcontract with AA for $123,471 to perform certain heating, ventilating and air conditioning work (HVAC work) for the project. The amount was subsequently increased by an additional $4,040.

The written contract between BABCO and AA provided:

"No assignment of this agreement of moneys due or which may become due hereafter shall be made without the prior written consent of BABCO. This agreement shall not be sublet in whole or in part without the prior written consent of BABCO."

Despite the no-assignment and no-sublet-without-BABCO's-written-consent provision in its subcontract with BABCO, on April 4, 1988, AA entered into an oral secondary subcontract with Season, without the consent or knowledge of BABCO. According to the oral secondary subcontract between AA and Season, Season was to furnish labor and materials relating to the installation of HVAC work on the

project. The oral agreement provided for a contract price of $33,568. There is no explanation in the record as to why an oral rather than a written secondary subcontract was entered into between AA and Season; nor are there any details of the oral agreement.

Pursuant to its oral secondary subcontract with AA, Season began working on the project in April of 1988. On June 16, 1988, Season billed AA in the amount of $19,325.93 for labor and materials, and on July 7, 1988, in the amount of $8,291.82. On July 8, 1988, however, AA filed for bankruptcy. At that time, Season had not received payment from AA for its labor and materials relating to the installation of HVAC work, which amounted to $27,618. As a result, on July 11, 1988, Season ceased working on the project.

On July 26, 1988, for the first time Season served Jewel with a subcontractor's notice of lien under the Act, and on July 27, 1988, Season served BABCO and AA. On September 15, 1988, Season recorded its lien notices with the recorder of deeds for Cook County. There is no explanation in the record as to why Season did not file a lien notice pursuant to the Act prior to July 26, 1988.

From January 12, 1988, through December 18, 1988, BABCO submitted sworn statements to Jewel pursuant to the Act, stating the name of each subcontractor, the amount of the subcontract, the amount paid and the amount owed. Season was not named in any of these sworn statements by BABCO because AA had not named Season in the sworn statements that it had submitted to BABCO. The sworn statements that AA had submitted to BABCO required AA to name any of AA's secondary subcontractors. At no time prior to the service of its notice of lien on Jewel on July 26, 1988, did Season notify Jewel or BABCO that it was a secondary subcontractor on the project or that any money was owed to it by AA.

Since AA never completed performance of its subcontract with BABCO, on September 6, 1988, that subcontract was terminated. On BABCO's October 1, 1988, statement to Jewel, it lists $108,000 as having been paid to AA, with no retainage existing and no money owing. Throughout the entire course of their subcontractual relationship, payments by BABCO to AA were as follows:

| | | |
|---|---|---|
| April 25, 1988 | — | $ 5,850.00 |
| May 13, 1988 | — | $ 54,450.00 |
| June 22, 1988 | — | $ 36,900.00 |
| June 30, 1988 | — | $ 10,800.00 |
| July 20, 1988 | — | $ 2,000.00 (paid to a material supplier of AA). |

As a result of AA not fully performing on its contract with

BABCO, on October 11, 1988, BABCO entered into a new subcontract with V.A. Smith Co. (Smith) to complete the HVAC work. BABCO's subcontract price with Smith was $26,377. Smith is not part of this litigation.

Payments by Jewel to BABCO under the terms of their contract began on February 18, 1988. After July 27, 1988, Jewel made three payments to BABCO. These payments amounted to $491,324 and were made on the following dates: August 12, 1988; December 7, 1988; and March 3, 1989.

The issues in this case are founded upon Season's first amended complaint of subcontractor to foreclose mechanics lien (complaint). The complaint contains three counts. The first count alleges that Season had an oral contract with AA to provide work and material on the premises and that it was owed $27,618 from AA for such work and material, but it was not paid because AA filed for bankruptcy, and that afterward Season served Jewel with a notice of lien pursuant to the Act and therefore a lien should be imposed on the real property. Count II alleges that Season is entitled to judgment against Jewel, Borenstein and AA jointly and severally pursuant to section 28 of the Act. Count III alleges: "The non-payment for the materials and labor as aforesaid unjustly enriches Defendant Jewel Tea Company, to the detriment and loss of the Plaintiff, Season Comfort, Corp."

■ The judgment by the trial court against BABCO is based on an assignment from AA to Season. Also, the judgment provides that because of the assignment by AA to Season, BABCO is indebted to Season for the $27,618 that AA did not pay Season. The complaint, however, does not allege that Season was an assignee or that Season was proceeding as an assignee of AA. The complaint does not in any way mention or allege an assignment or an assignment theory. Nor did the parties offer or put in any evidence of an assignment. Thus, the trial court decided this case on an assignment theory when no such theory was pleaded and no evidence was introduced to support such a theory.

The law is clear that in order for a party to obtain relief, it must prove the allegations it makes in its complaint. (*Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 744, 474 N.E.2d 1274, 1278.) Proof without pleadings is as defective as pleadings without proof. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1021, 498 N.E.2d 867, 875.) In addition, a party cannot plead one cause of action in its complaint and receive judgment on the basis of a different cause of action. (*Fornoff v. Smith* (1935), 281 Ill. App. 232, 235-36.) Thus, Season cannot receive a judgment on the basis of an assignment of AA's rights under AA's subcontract with BABCO.

Moreover, in the present case, the basis for the trial court concluding that AA made an assignment of its right to be paid from BABCO is the fact that Season had a workman on the jobsite and because "BABCO's project manager was aware that Season was performing work on the project." Assuming that Season had a workman on the jobsite and that BABCO's project manager was aware that Season was performing work on the project, those facts are not sufficient to establish that AA made an assignment of its subcontract with BABCO to Season. This is especially true since neither AA nor Season ever told anyone, nor each other, that there was an assignment.

A party who is a secondary subcontractor is not *ipso facto* an assignee of the rights that the subcontractor is to receive from the general contractor. The subcontractor and the secondary contractor make their own separate deal, which may or may not include an assignment of the subcontractor's rights under its own contract with the general contractor. In order to have the existence of an assignment there must have been an intent to make an assignment. "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." (Restatement (Second) of Contracts § 317(1) (1981).) It is necessary that the assignor manifests an intent to transfer his rights under the contract to the assignee. Here, the record is devoid of any such fact. The presumed assignment is thus without foundation in fact.

On appeal, although Season concedes that it never alleged or proved an assignment by AA, Season claims that there was an equitable assignment of a chose in action; a theory which was not pleaded, presented or argued in the trial court. There can be no equitable assignment of a chose in action, however, unless it is shown that the presumed assignor and the presumed assignee intended an assignment of the chose in action. (*Holsinger, Theis & Co. v. Holsinger* (1946), 329 Ill. App. 460, 472-73, 69 N.E.2d 360, 366.) In *Holsinger*, the court held: "No particular form is necessary as to the validity of an assignment of a chose in action. Any order, writing or act which makes an appropriation of a fund amounts to an equitable assignment of the fund. Any words are sufficient *which show an intention of transferring the chose in action to the assignee* for a valuable consideration. The ultimate question in all cases of equitable assignment is always what was intended by what was said and done by the parties." (Emphasis added.) 329 Ill. App. at 472-73, 69 N.E.2d at 366.

■ In the present case, there is nothing to show that an assign-

ment of AA's rights under its contract with BABCO was intended by what was said or done by AA and Season. Instead, the facts show the contrary. Neither AA nor Season ever said anything about an assignment and neither of them ever filed or claimed anything as an assignor or an assignee. Even in the present litigation, Season filed its complaint and presented its case solely as a secondary subcontractor and not as an assignee. Thus, Season's claim on appeal that there was an equitable assignment is made of whole cloth. There was never an assignment in fact or an equitable assignment in this case. Under the circumstances, we need not determine the enforceability of the provision in BABCO's written subcontract with AA that there was to be no assignment and no sublet of the subcontract without BABCO's prior written consent.

We next address Season's contention that it has a lien on the premises pursuant to the Act for the $27,618 that it was not paid by AA, and that it can enforce the lien against both Jewel and BABCO. (See 770 ILCS 60/1, 28 (West 1992).) Pursuant to the Act, Jewel demanded from BABCO and BABCO provided Jewel with sworn statements listing the subcontractors with which BABCO had contracted. These statements included AA as a subcontractor, but they did not include Season because BABCO was never told that AA had an oral contract with Season as a secondary subcontractor. BABCO had demanded and AA had provided a sworn statement listing the secondary subcontractors with whom AA had contracted. AA provided a false sworn statement which stated that it had not contracted with any other entity.

■ The Act requires written timely notice by subcontractors and secondary subcontractors to be protected. If Season had served a written timely notice on BABCO, then BABCO would have known that AA's sworn statement was false and Season would have been protected under section 28 of the Act. Season, however, did not serve a written timely notice on BABCO. The reason that written timely notice is required is obvious. Only the subcontractors and the secondary subcontractors themselves are in position to provide sufficient information which would evince sworn statements such as AA's to be false.

Moreover, if a secondary subcontractor chooses not to rely on the subcontractor or the general contractor to provide written timely notice of its lien to the owner, the Act provides that the secondary subcontractor can provide written notice directly to the owner. (770 ILCS 60/24 (West 1992).) Where the owner does not receive written timely notice directly from the secondary subcontractor or through the subcontractor or the general contractor pursuant to the Act, no

lien can attach under the Act. (*Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, 791, 275 N.E.2d 451, 453; *Sanaghan v. Lawndale National Bank* (1967), 90 Ill. App. 2d 254, 263, 232 N.E.2d 546, 551.) In the absence of a timely written notice to the general contractor or the owner, secondary subcontractors must bear the risk of loss from false statements made by subcontractors such as AA. *Sanaghan*, 90 Ill. App. 2d at 263, 232 N.E.2d at 551; *John E. Burns Lumber Co. v. W.J. Reynolds Co.* (1909), 148 Ill. App. 356, 360-61.

Moreover, the Act must be strictly complied with to impose a lien under the Act. The mere presence or knowledge of a contractor's workman on a job will not constitute notice to satisfy the statute. (*Sanaghan*, 90 Ill. App. 2d at 260, 232 N.E.2d at 549.) In *Sanaghan*, the court stated:

> "There is nothing in the Mechanics' Lien Act which can be construed as providing that mere presence of a workman on a job will constitute notice to the owner on which a mechanic's lien may be based. \*\*\*
>
> \* \* \*
>
> \*\*\* Notice must be given either by way of statements under sections 5 and 22 or by independent notice previous to payment, as provided by section 27. In the absence of such timely independent notice, laborers and materialmen must bear the risk of loss from false statements made by contractors and subcontractors. *Knickerbocker Ice Co. v. Halsey Bros. Co.*, 262 Ill. 241, 104 N.E. 665; *John E. Burns Lumber Co. v. W.J. Reynolds Co.*, 148 Ill. App. 356. As stated in the latter case (p 360):
>
> > 'An owner constructing a large, extensive building would find it very difficult to verify the truth of such statements by ascertaining the amounts due to and the names of all employees and material furnishers of the contractors and subcontractors, should he be required to do so in order to protect himself, while it is, comparatively, an easy matter for subcontractors and furnishers of labor and material to protect themselves by notice under the law. Thus, upon a balancing of the hardships and inconveniences between the owner and those to be protected it appears to be more equitable that in case of loss, through an untrue statement, the loss should fall, as appears to be the policy of the law, upon the material furnisher who has failed to give timely notice.'
>
> The equitable and practical considerations mentioned in the Burns case are as valid today as when made." 90 Ill. App. 2d at 260-63, 232 N.E. at 549-51.

■ In addition, in the present case Season served notice of its secondary subcontractor's lien on Jewel on July 26, 1988; it served

BABCO on July 27, 1988. On July 26, 1988, however, neither Jewel nor BABCO owed any money to AA, Season's immediate contractor. A secondary subcontractor, such as Season, is limited in the assertion of liens to the amounts due its immediate contractor at the time the notice of lien is given. (*Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 1081, 454 N.E.2d 379; *Koenig v. McCarthy Construction Co.* (1951), 344 Ill. App. 93, 104, 100 N.E. 338.) It follows that Season cannot recover any amount from Jewel or BABCO pursuant to any lien under the Act because at the time that Season served notice of its lien neither Jewel nor BABCO owed any money to AA. Thus, under no circumstance does Season possess a valid lien under the Act.

■ We next address Season's claim of unjust enrichment. It is axiomatic that an unjust enrichment claim is viable only when there is no adequate remedy at law. Here, Season did have an adequate remedy at law against AA, BABCO and Jewel but its remedy was either not properly pursued or, as against AA, its remedy is merely "uncollectible." An uncollectible debt because of bankruptcy by one party does not transfer into an unjust enrichment claim against a third party who is solvent. In addition, a party cannot ignore or fail to comply with the remedies available to it under the Act and then gain redress by claiming that it is the victim of the other party's unjust enrichment. (*Hill Behan Lumber Co.*, 1 Ill. App. 3d at 792, 275 N.E.2d at 453.) In *Hill*, a materialman brought suit to foreclose a mechanic's lien or, in the alternative, to impose an equitable lien on the premises owned by the defendants; the trial court entered judgment in favor of the defendants and the plaintiff appealed. On appeal, the appellate court held:

> "Plaintiff also contends that it was entitled to an equitable lien on the grounds of unjust enrichment. We are unable to find any authority which would grant an equitable lien in a situation where it would have been appropriate to impose a mechanic's lien had there been compliance with the statute. Our research reveals that the sole remedy of subcontractor against the owner of premises is under the Mechanics' Liens Act. *Traubco Food v. United Auto Workers* (1970), 123 Ill. App. 2d 106, *Vanderlaan v. Berry Const. Co.* (1970), 119 Ill. App. 2d 142, 144, *Suddarth v. Rosen* (1967), 81 Ill. App. 2d 136, 139.
>
> Our case of *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, which was relied on by plaintiff, is distinguishable as not involving a suit by a subcontractor.
>
> The judgment of the trial court was correct and must be affirmed." 1 Ill. App. 3d at 792, 275 N.E.2d at 453.

Likewise, in the present case the sole remedy that Season may

have had against Jewel or BABCO would have been under the Act. Season's failure to comply with the Act does not warrant relief under the doctrine of unjust enrichment.

Moreover, one is not unjustly enriched by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution. No person is unjustly enriched unless the retention of the benefit would be unjust. (66 Am. Jur. 2d *Restitution & Implied Contracts* § 3 (1973).) There is nothing in this case to demonstrate that either Jewel or BABCO was unjustly enriched. Merely because Season suffers a loss because of the bankruptcy of AA does not mean that Jewel or BABCO was unjustly enriched.

Accordingly, the judgment in favor of Jewel is affirmed. The judgment in favor of Season and against BABCO is reversed, and judgment is hereby entered in favor of BABCO and against Season. The case is remanded for further proceedings against AA or as shall be determined by the trial court in accordance with this opinion.

Affirmed in part; reversed in part and remanded.

TULLY and CERDA, JJ., concur.