WEYDERT HOMES, INC., Plaintiff-Appellant, v. RICKEY A. KAMMES, Indiv. and as Trustee of the Rickey A. Kammes Living Trust, Dated August 17, 2005, Defendant-Appellee (MidAmerica Bank, FSB, *et al.*, Defendants).

Second District   No. 2—08—0768

Opinion filed September 30, 2009.

_____

Jeffrey A. Meyer, of Smith & Tucker LLC, of Sycamore, for appellant.

Patrick L. Edgerton, of Edgerton & Edgerton, of West Chicago, for appellee.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiff, Weydert Homes, Inc., appeals from an order dismissing its complaint to foreclose a mechanic's lien, for breach of contract, and for *quantum meruit*. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On January 11, 2007, plaintiff entered into a written contract with defendant Rickey A. Kammes in which plaintiff, as the general contractor, agreed to build a house for the price of $216,800.[1] According to plaintiff's complaint, it did additional work on the premises, in the amount of $40,145.

On February 28, 2008, plaintiff recorded an "original contractor's claim for mechanic's lien" in which it averred that the written contract

---

[1] The complaint alleges that the agreement was entered into by Kammes either individually or as trustee of the Rickey A. Kammes Living Trust dated August 17, 2005. The signature on the contract is simply "Rickey A. Kammes."

was entered into, plaintiff performed the work, plaintiff performed additional work in the amount of $40,145 at the request of the owner (Kammes), the date plaintiff last performed work was November 30, 2007, and there was due and owing to plaintiff the sum of $51,205 plus interest. According to an affidavit, plaintiff through its attorney and representative and Kammes and his attorney met at Fox Title Company in Sycamore, Illinois, on March 28, 2008, at which time Kammes's attorney requested a "sworn" contractor's statement showing the subcontractors and the amounts owed to each of them. Correspondence in the record shows that on April 8, 2008, Kammes's attorney requested that plaintiff produce a "current" sworn contractor's statement. Plaintiff had furnished a purported sworn statement dated December 18, 2007, signed by Brian Weydert as president of plaintiff. However, this statement was not notarized. Although plaintiff denies that Kammes requested a sworn statement in March, it is undisputed that plaintiff did not furnish a sworn statement pursuant to Kammes's April request.

On May 13, 2008, plaintiff filed suit against Kammes and others unrelated to this appeal (a lender, subcontractor-lien claimants, and unknown necessary parties and owners). Count I sought to foreclose plaintiff's mechanic's lien, count II alleged breach of contract, and count III alleged *quantum meruit* as an alternative to count II. Kammes filed a motion to dismiss the complaint in its entirety, claiming that plaintiff's refusal to provide a sworn contractor's statement after his demand defeated enforceability of the lien. The motion to dismiss further contended that count II, breach of contract, had to be dismissed because of the defective sworn contractor's statement and that count III, *quantum meruit*, should be dismissed because plaintiff had pleaded the existence of an express written contract. The trial court agreed with Kammes and dismissed the complaint on July 18, 2008. In its written order of that date, the trial court made an express written finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). This timely appeal followed.

## DISCUSSION

### DISMISSAL OF THE COUNT TO FORECLOSE MECHANIC'S LIEN

Plaintiff's first contention is that the trial court erred in dismissing count I, in which it sought to foreclose its mechanic's lien. The trial court held that plaintiff's failure to furnish a new sworn contractor's statement after Kammes's request forfeited plaintiff's lien rights. In response to plaintiff's question at the hearing on the motion to dismiss, the trial court opined that the December 18, 2007,

sworn contractor's statement was legally insufficient, although the court stated, "I don't think it matters. *** I think I don't even have to reach the issue of whether that was sufficient or not."

The trial court dismissed count I pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 2006)). A section 2—619 motion to dismiss admits the legal sufficiency of the complaint while it raises defenses, defects, or other affirmative matters that defeat the claim. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 613 (2007). The court accepts as true well-pleaded allegations. *Fuller*, 371 Ill. App. 3d at 613. An action will be dismissed under section 2—619 if after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, the court finds that no set of facts can be proved upon which relief can be granted. *Fuller*, 371 Ill. App. 3d at 613. The question is whether there is a genuine issue of material fact that precludes dismissal or whether dismissal is proper as a matter of law. *Fuller*, 371 Ill. App. 3d at 613. Our review is *de novo. Fuller*, 371 Ill. App. 3d at 613.

■ The affirmative matter Kammes raised in his motion to dismiss was that he demanded a "current" sworn contractor's statement, which plaintiff refused to furnish. The purpose of the Mechanics Lien Act (Act) (770 ILCS 60/1 *et seq.* (West 2006)) is to permit the contractor a lien upon the property where a benefit has been received by the owner and the value of the property has been increased or improved by the furnishing of labor or materials. *Northwest Millwork Co. v. Komperda*, 338 Ill. App. 3d 997, 1000 (2003). The rights created under the Act are statutory and in derogation of the common law, and the technical and procedural requirements necessary for a party to invoke the benefits of the Act must be strictly construed. *Westcon/Dillingham Microtunneling v. Walsh Construction Co.*, 319 Ill. App. 3d 870, 877 (2001). Once a plaintiff has complied with the procedural requirements, the Act is liberally construed in order to accomplish its remedial purpose. *Westcon/Dillingham*, 319 Ill. App. 3d at 877. Section 5 of the Act provides in relevant part:

"(a) It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or

machinery, forms or form work and of the amounts due or to become due to each. Merchants and dealers in materials only shall not be required to make statements required in this Section.

(b) The following shall apply to an owner-occupied single-family residence:

(i) Each contractor shall provide the owner or his or her agent, either as part of the contract or as a separate printed statement given before the owner or his agent makes the first payment for labor, materials, fixtures, apparatus or machinery, the following:

'THE LAW REQUIRES THAT THE CONTRACTOR SHALL SUBMIT A SWORN STATEMENT OF PERSONS FURNISHING LABOR, SERVICES, MATERIAL, FIXTURES, APPARATUS OR MACHINERY, FORMS OR FORM WORK BEFORE ANY PAYMENTS ARE REQUIRED TO BE MADE TO THE CONTRACTOR.' " 770 ILCS 60/5 (West 2006).

Plaintiff gave Kammes what it asserts was a statement under oath dated December 18, 2007, that complied with the requirements of section 5. At the top of the document there appeared the following language: "The affiant, Brian Weydert, being duly sworn on oath deposes and says that he is the President of Weydert Homes, Inc. and the General Contractor for the construction of a single family residence in Wheaton, IL, owned by Rick Kammes." The body of the document listed the names of subcontractors, a column of numbers preceded by dollar signs, and a column briefly describing the purposes of some of the expenditures. Below these three columns appeared "Net Amount This Payment: $51,205.00" and "Balance To Come Due $91,350.00." Brian Weydert's signature appeared on the signature line at the bottom of the document, followed by his office and the date "12/18/07." Below Weydert's signature were the typewritten words, "Subscribed and Sworn to before me this 31st day of October 2006," next to which was a blank line with the word "Seal" typed beneath it.

While the document was signed by Brian Weydert as president of Weydert Homes, Inc., it was not notarized. Plaintiff argues that section 5 allows the statement either to be made under oath *or* to be verified by affidavit. As the first sentence of the document recites that Brian Weydert was "duly sworn on oath," plaintiff reasons that the document was made under oath.

The court's primary objective in construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). The plain language of the statute is the most reliable indication of the legislature's objectives, and when the language is clear, it must be applied as written without resort to aids or tools of

construction. *MidAmerica Bank*, 232 Ill. 2d at 565. The word "or" is disjunctive. *In re Application of County Treasurer*, 373 Ill. App. 3d 679, 694 (2007). A disjunctive connotes two different alternatives; thus, as used in its ordinary sense, the word "or" indicates that the various parts of the sentence it connects are to be taken separately. *County Treasurer*, 373 Ill. App. 3d at 694.

■ A legal commentator has recognized a distinction between an oath and an affidavit.

> "An oath, which has been defined as any form of attestation by which a person signifies that he or she is bound in conscience to perform an act faithfully and truthfully, is distinguished from an affidavit, which is a voluntary written statement of fact under oath sworn to or affirmed by the person making it before some person who has authority under the law to administer oaths and officially certified by the officer under his or her seal of office. The difference between an affidavit and an oath is that an affidavit consists of a statement of fact, which is sworn to as the truth, while an oath is a pledge." 58 Am. Jur. 2d *Oath & Affirmation* §3 (2009).

A pledge is a formal promise or undertaking. Black's Law Dictionary 1192 (8th ed. 2004). The distinction between an oath and an affidavit is found in Illinois law as well. "In general, it has been said that an oath is an appeal by a person to God to witness the truth of what he declares[,] and in its broadest sense it includes any form of attestation by which a party signifies that he is bound in conscience to act truthfully." *In re Petition for Removal of Rice*, 35 Ill. App. 2d 79, 84 (1962). In contrast, an affidavit is "a written declaration under oath sworn to before a person with authority under the law to administer oaths." *Brennan v. Kolman*, 335 Ill. App. 3d 716, 722 (2002).

■ Having agreed with plaintiff that an oath is not the same as an affidavit and that the legislature did not use these terms interchangeably, we still must determine whether the statement plaintiff furnished complied with section 5. It is undisputed that plaintiff did not submit an affidavit. The question is whether Weydert's declaration in the contractor's statement that he was sworn under oath, when the document did not reflect that anyone empowered to administer oaths did so, is sufficient. An oath, taken by itself or to verify an affidavit, is subject to the requirements of the Oaths and Affirmations Act (5 ILCS 255/0.01 *et seq.* (West 2006)), which provides that whenever a person is required to take an oath it shall be administered by a person so empowered (5 ILCS 255/3 (West 2006)), namely, a court, judge, clerk of court, county clerk, deputy county clerk, Secretary of State, notary public, person certified under the Illinois Certified Shorthand Reporters Act of 1984 (225 ILCS 415/1 *et seq.* (West 2006)), or commissioned

officer in active service of the armed forces of the United States. 5 ILCS 255/2 (West 2006). Here, the oath appears not to have been administered in accordance with the statute, because the notary's signature and seal are not affixed.

■ Plaintiff argues that the jurat, which is the certificate of the officer administering the oath, is not necessary and that it may be shown by parol evidence that the statement was in fact sworn to. Plaintiff relies on *Cox v. Stern*, 170 Ill. 442 (1897), and *Cohen v. Bernstein*, 170 Ill. App. 113, 118 (1912), for the latter position. Although plaintiff asserts that it never got an opportunity to prove the swearing because the case never reached trial, we point out that plaintiff had an opportunity to present this evidence in an affidavit in opposition to the section 2—619 motion to dismiss and did not do so. Moreover, an oath that is not administered by a person empowered to administer oaths will not support a charge of perjury. *People v. Watson*, 85 Ill. App. 3d 649, 652 (1980). Accordingly, we agree with the trial court that the December 18, 2007, statement was noncompliant with section 5.[2]

Nevertheless, plaintiff maintains that it fulfilled the intent of section 5 given that Kammes did not request the section 5 sworn statement until after plaintiff perfected its lien and after the 90-day deadline by which claims of subcontractors were due. See 770 ILCS 60/24 (West 2006). Plaintiff reasons that the purpose of section 5 was met because Kammes had notice of any subcontractors' claims. The question is whether a contractor should be precluded from enforcing or foreclosing its lien if it refuses a request for a sworn statement after perfecting its lien and after the 90 days for subcontractors' claims have passed.

We do not read into the plain language of a statute exceptions, limitations, or conditions that conflict with the legislature's expressed intent. *MidAmerica Bank*, 232 Ill. 2d at 565-66. The only time limitation that the statute provides is that the owner must request, and the contractor must furnish, a sworn statement before the owner or his agent, architect, or superintendent pays any moneys or other consideration to the contractor. To construe the statute as plaintiff suggests would be to read into it a condition or limitation the legislature did not express. Moreover, courts should not extend mechanic's liens " 'to cases not provided for by the language of the [A]ct even though they may fall within its reason.' " *Inter-Rail*

---

[2]For the first time on appeal, Kammes makes the argument that the statement is deficient in other respects besides lacking a notary's certificate. Because we agree that the lack of a notary certificate renders the statement insufficient, we do not delve into Kammes's other arguments.

*Systems, Inc. v. Ravi Corp.*, 387 Ill. App. 3d 510, 516 (2008), quoting *Robinette v. Servite Fathers*, 49 Ill. App. 3d 585, 587 (1977).

Plaintiff relies on *Northwest Millwork*. However, plaintiff's citation of *Northwest Millwork*'s holding, that the failure to provide a valid section 5 sworn contractor's statement will not preclude the contractor's claim where the time for subcontractors to file their claims has expired, is of no avail in this context. *Northwest Millwork* involved a breach-of-contract claim, and the issue there was whether the failure to furnish a sworn statement precluded the contractor from recovering on his contract. This court concluded that it would be inequitable to allow a technicality to defeat an otherwise valid *contract* claim. *Northwest Millwork*, 338 Ill. App. 3d at 1003. Nonetheless, "[i]t is well established that the creation of a mechanics lien is entirely governed by the Act, and the rules of equity jurisprudence are irrelevant at this stage." *Westcon/Dillingham*, 319 Ill. App. 3d at 877.

Plaintiff worries that if it had to furnish a new sworn contractor's statement in response to the April written demand (as noted, plaintiff denies that Kammes requested a sworn statement in March), it might have to file a new lien, thereby losing its priority. Nothing in the Act links the requirement of a section 5 sworn statement with the ability to perfect the lien, and it is the perfection of the lien that creates priority. 770 ILCS 60/7 (West 2006). Plaintiff further predicts "dire" consequences if owners may continually demand new or current statements. While we agree with plaintiff that construing section 5 to allow an owner to frustrate foreclosure on a valid lien by constantly demanding new sworn statements would lead to an absurd result, such is not our fact pattern here. The December 18, 2007, contractor's statement was noncompliant with section 5. Therefore, plaintiff had not furnished a statement at the time Kammes requested it in March and/or April 2008. A contractor's lien will be defeated by the contractor's failure to comply with section 5 only if the owner has requested a sworn contractor's statement. *Abbott Electrical Construction Co. v. Ladin*, 144 Ill. App. 3d 974, 979 (1986). Kammes requested the sworn statement, and plaintiff failed to comply.

Plaintiff insists that the technicality of the unsworn contractor's statement did not prevent Kammes from relying on it. This would be true if Kammes had chosen to accept it as showing the amounts due to the subcontractors. *Kiefer v. Reis*, 331 Ill. 38, 47 (1928). However, Kammes did not accept it, as evidenced by his alleged oral demand for a sworn statement in March followed by his written April demand. Our supreme court recently reaffirmed that the owner has a duty to require the sworn statement before paying the contractor any moneys. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 393

(2009). We cannot write that duty out of the statute. Accordingly, the trial court did not err in dismissing count I of the complaint.

## DISMISSAL OF THE BREACH OF CONTRACT COUNT

■ Plaintiff's second contention is that count II, breach of contract, should not have been dismissed. In *Ambrose v. Biggs*, 156 Ill. App. 3d 515 (1987), this court held that the plaintiff contractor could not recover for breach of contract where the contractor had not furnished a section 5 sworn contractor's statement to the defendant owner. We reasoned that since an owner is not protected from potential subcontractors' claims unless a proper contractor's statement is provided, an owner who has not received a statement is justified in not paying the contractor and is not in breach. *Ambrose*, 156 Ill. App. 3d at 518. This court followed *Ambrose* in *Malesa v. Royal Harbour Management Corp.*, 187 Ill. App. 3d 655 (1989). In *Northwest Millwork*, we came to the opposite result because the facts were distinguishable from those in *Ambrose* and *Malesa*. In *Northwest Millwork*, by the time the plaintiff (who had not furnished a sworn contractor's statement) filed suit against the owners, it was long after the 90-day period for subcontractors to file their lien claims and the owners did not claim any actual prejudice or exposure to potential subcontractors' claims. *Northwest Millwork*, 338 Ill. App. 3d at 1003. In our case, plaintiff relies on *Northwest Millwork* while Kammes relies on *Ambrose* and *Malesa*.

Kammes argues that he is still subject to the claims of unknown subcontractors because the December 18, 2007, contractor's statement either was false or showed there was more work to be done. Because this statement was noncompliant with section 5, it is of no effect. Kammes cannot refuse to rely on it for purposes of defeating plaintiff's lien and then rely on it for purposes of defeating plaintiff's contract claim. Plaintiff's verified complaint alleged that it last performed work on the property on November 30, 2007. This allegation was admitted by Kammes's section 2—619 motion to dismiss. Kammes does not claim that any subcontractors performed work beyond that date. March 1, 2008, was the ninetieth day, the deadline for subcontractors to file their lien claims. Kammes did not request the sworn statement until well after this date. Moreover, plaintiff filed suit not only for breach of contract, but also to foreclose the mechanic's lien, and the subcontractors that filed liens (and those that might be unknown) were joined. The record reflects that Kammes had actual notice of at least two subcontractors' liens prior to his March and/or April demands for a sworn statement. This case presents facts most similar to *Northwest Millwork*, and, as in that case, to deny plaintiff its right

to sue for breach of contract because it did not observe a technicality on its road to enforcing the mechanic's lien would be inequitable. Accordingly, we reverse the judgment of the circuit court dismissing count II of the complaint.

## DISMISSAL OF THE *QUANTUM MERUIT* COUNT

■ Plaintiff's last contention is that the trial court erred in dismissing count III, which was for *quantum meruit*. *Quantum meruit* is used as an equitable remedy to provide restitution for unjust enrichment and is often pleaded as an alternative claim in a breach-of-contract case so that the plaintiff may recover even if the contract is unenforceable. Black's Law Dictionary 1276 (8th ed. 2004). The fact that plaintiff pleaded the existence of a written contract does not preclude it from pleading *quantum meruit* in the alternative. "When a builder does not substantially perform under a contract, he is limited to claiming damages under a theory of *quantum meruit*." *Evans & Associates, Inc. v. Dyer*, 246 Ill. App. 3d 231, 242 (1993). A contractor who is not entitled to a mechanic's lien because he did not substantially perform the contract in a workmanlike manner is limited to recovery in *quantum meruit*. *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 610 (1999). Here, the trial court held that plaintiff was not entitled to plead a theory of *quantum meruit* because it had a "valid and binding" contract. The court's findings regarding the contract were premature, as it was ruling on a motion addressed to the pleadings and had not considered any evidence either in support of a motion for summary judgment or at trial concerning the formation of, or performance of, the contract.

Kammes relies on a line of cases that holds that a *sub*contractor's exclusive remedy against an owner is the Act. These cases are distinguishable on the obvious basis that a subcontractor has no privity with the owner. Kammes's second argument for why the dismissal of count III was proper is that plaintiff's failure to provide the section 5 sworn contractor's statement precludes its recovery in *quantum meruit*. Kammes cites *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648 (1995), for the proposition that a failure to follow the dictates of the Act precludes recovery on a theory of unjust enrichment. However, the facts in *Season* are distinguishable. In *Season*, the plaintiff subcontractor (Season) failed to do anything to protect itself from a dishonest contractor that did not include Season on the contractor's sworn statements. *Season*, 281 Ill. App. 3d at 651. When Season could not collect the money owed it by the contractor because of the contractor's bankruptcy, Season attempted to persuade the court that the owner was unjustly enriched. *Season*, 281 Ill. App. 3d at

657. Even though Kammes argues that plaintiff acted in bad faith in failing to furnish a sworn statement after his March and/or April demands, we believe that the reasoning in *Northwest Millwork* applies. If the technicality was not sufficiently egregious to deny plaintiff recovery for breach of contract, it is not sufficiently egregious to deny its claim for *quantum meruit*. Accordingly, the trial court's judgment dismissing count III is reversed.

## CONCLUSION

For the foregoing reasons, we affirm the dismissal of count I, reverse the dismissal of counts II and III, and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and O'MALLEY, JJ., concur.