2025 IL App (2d) 250143-U
No. 2-25-0143
Order filed November 3, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| ELYSE CLARK f/k/a/ Elyse Wold and ROGER CLARK, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiffs and Counter-defendants-Appellants, | ) ) ) ) | |
| v. | ) ) | No. 21-CH-26 |
| J.B. ARCHITECTURE GROUP, INC., JONATHAN A. BIERITZ, MATTHEW RYAN BUILDERS, INC., MICHAEL BARIBALL, and VILLAGE OF MONTGOMERY, | ) ) ) ) ) ) | |
| Defendants and Counter-plaintiffs-Appellees. | ) ) ) | Honorable Stephen L. Krentz, Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Plaintiffs fail to provide discernible, coherent argument, leaving this court to supply the lack and judge the result in gross violation of Supreme Court Rule 341, and we dismiss the deficiently argued issues. Plaintiffs' contention that defendants' mechanics lien is invalid because defendants were not properly licensed by the Village is minimally adequately presented, and we affirm the trial court because the undisputed facts adduced at trial rebut the contention.

¶ 2   Plaintiffs and counter-defendants, Elyse Clark, formerly known as Elyse Wold, and her husband, Roger Clark, appeal the judgment of the circuit court of Kendall County in favor of

defendants and counter-plaintiffs, JB Architecture Group, Inc.,[1] Jonathan A. Bieritz, Matthew Ryan Builders Inc., Michael Bariball, and the Village of Montgomery. Following a bench trial, the trial court entered a judgment denying plaintiffs' claim to quiet title and granting defendants' claims to foreclose a mechanics lien and for breach of contract. The court awarded the amount of $62,448.76 for defendants' claims. Thereafter, the court entered a judgment of foreclosure sale on plaintiffs' subject property in the amount of $143,428.83. On appeal, plaintiffs fail to clearly articulate their issues and arguments beyond their disagreement with the court's judgment and desire for its reversal. Instead, plaintiffs provide snippets of analysis uncontextualized by a coherent argument: (1) "the trial court's reliance on this Court's opinion in [*Northwest Millwork Co. v. Komperda*, 338 Ill. App. 3d 997 (2003)] is misplaced;" (2) "the purported mechanics lien is invalid because Defendants never delivered the required consumer rights brochure;" (3) "the requirement to provide sworn statements applies to every Illinois construction contract;" (4) "the purported construction agreement fails to include terms mandated by statute;" (5) "strict compliance with the Mechanics Lien Act is required;" (6) "[plaintiffs] effectively asked for a sworn statement before J.B. Architecture was terminated because [they] asked for a 'breakdown,' and none was provided by defendants;" (7) "defendants never provided any initial sworn statement required by statute;" (8) "to this date, defendants adamantly refuse to produce a proper sworn statement;" (9) "failure to provide a sworn statement renders the purported lien recording invalid;" (10) "J.B. Architecture offered no evidence of value enhancement;" (11) "J.B. Architecture's purported lien is invalid because the amount claimed is unsupported by any evidence;" (12) "J.B.

---

[1] The architecture firm styles itself as "JB Architecture Group, Inc.," but was apparently incorrectly captioned as "J.B. Architecture Group, Inc." We will hereafter follow how this defendant chooses to represent its identity.

Architecture's purported lien is invalid since it has never been a Village of Mongomery licensed building contractor;" and (13) "J.B. Architecture's purported lien recording constitutes slander of title." In this recitation of issues, only issue (12), the licensure claim, presents anything resembling coherent and proper legal argument—the remaining issues purported to be raised on appeal are so grossly violative of our supreme court's rules that we must dismiss them, and we affirm the trial court for the remaining issue.

¶ 3                                    I. BACKGROUND

¶ 4    On October 5, 2020, plaintiffs and JB Architecture entered negotiations to design and oversee the building of an addition to the subject property, plaintiffs' residence, in the Village of Montgomery. On December 14, 2020, the parties entered into a construction agreement setting forth the scope of the project and the payment schedule for the work. The total cost of the project was to be $157,900. On December 4, 2020, the Village issued the necessary building permit, and the construction began.

¶ 5    Plaintiffs continued to reside in their home during the construction. At some point, plaintiffs asked to supply their own electrical and plumbing subcontractors, and JB Architecture acquiesced to the request. During the construction, change orders were submitted, and additional costs pertaining to the change orders were incurred. On April 14, 2021, plaintiffs sent an email requesting to "see the cost breakdown of the project." On April 27, 2021, JB Architecture sent a breakdown of the costs, including change orders, in response to plaintiffs' request. The parties negotiated the costs over the next two weeks. On May 11, 2021, plaintiffs terminated JB Architecture's services alleging various violations of the Home Repair and Remodeling Act (815 ILCS 513/1 *et seq.* (West 2020)) and the Mechanics Lien Act (Act) (770 ILCS 60/0.01 *et seq.* (West 2020)). On May 24, 2021, JB Architecture recorded its mechanics lien, and on June 21, 2021, plaintiffs filed their complaint in this matter.

¶ 6        Eventually, the matter advanced to trial on plaintiffs' claim to quiet title, and on defendants' claims of foreclosure of mechanics lien, breach of contract, account stated, *quantum meruit*, and unjust enrichment.  On February 19, 2025, the trial court determined that the original building contract was valid and supported the claimed mechanics lien.  In an extremely helpful, thorough, and well-written order, it rejected plaintiffs' arguments and found that the failure to provide the required brochure under the Home Remodeling Act or the contractual notice and a sworn contractor's statement under section 5 of the Act (770 ILCS 60/5 (West 2022)) did not invalidate either the underlying contract or the lien itself.  Regarding the lien, the court determined that defendant had performed its duties under the contract determining that the value of the labor and materials totaled $107,450, which included some of the costs for the change orders.  Plaintiffs had paid $45,001.24 and were entitled an offset in that amount, and the court entered a net judgment in the amount of $62,448.76.  Regarding defendants' breach of contract claim, the court entered judgment in defendants' favor and awarded a net judgment of $62,448.76.  The court entered judgment in favor of plaintiffs and against defendants on the account stated claim, and it dismissed as moot defendants' remaining claims in light of its resolution of the mechanics lien and breach of contract issues.  The court also denied plaintiffs' claim to quiet title and entered judgment in favor of defendants and against plaintiffs on that claim.

¶ 7        On March 25, 2025, plaintiffs filed a motion to reconsider.  On March 31, 2025, the trial court denied plaintiffs' motion to reconsider, granted defendants' motion for attorney fees and costs in the amount of $53,271.68.  On April 1, 2025, the court entered a judgment of foreclosure and sale on the lien in the amount of $143,428.83, which included the money judgment from the trial, interest on the money judgment, and the award of attorney fees and costs.  Plaintiffs timely appeal.

¶ 8                                        II. ANALYSIS

¶ 9       As noted above, *supra* ¶ 2, plaintiffs enumerate 13 "issues" they purport to raise on appeal. Our review shows them not to be issues in the traditional sense, but simply unconnected and incoherent bits of analysis strewn across the pages of their brief. Plaintiffs have not attempted to forge these bits into anything approaching a clear statement of issues or clear argument on any issues they attempt to raise. For this reason, we deem that plaintiffs have so irremediably violated Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), that we are left with no choice but to dismiss the portions of this appeal that are violative of Rule 341(h)(7). Rather than doing so in summary fashion, which is entirely deserved and warranted, we will address each of the 13 snippets to explain why each is wanting even if each were fit into a larger tapestry of an argument.

¶ 10                          A. Requirements of Rule 341

¶ 11     We begin with our overall reason for deeming that plaintiffs have so failed to comply with Rule 341(h)(7) that we are left with no recourse but to dismiss the affected portions of this appeal. Rule 341 pertinently provides: "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Illinois courts have long held that Rule 341 precludes an appellant from foisting the burden of argument onto a reviewing court. *E.g.*, *People v. Chatman*, 357 Ill. App. 3d 695, 703 (1st Dist. 2005), *County of McHenry v. Thoma*, 317 Ill. App. 3d 892, 892 (2d Dist. 2000), *People v. Jackson*, 362 Ill. App. 3d 1096, 1102 (4th Dist. 2006), *Three Angels Broadcasting Network, Inc. v. Department of Revenue*, 381 Ill. App. 3d 679, 699 (5th Dist. 2008). Indeed, a reviewing court is entitled to have the issues of the appeal clearly defined with cohesive and coherent arguments presented in support. *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 61.

¶ 12    Here, plaintiffs have failed to identify the issues they believe the trial court erred in deciding, and their argument consists of disjointed and incoherent snippets. This "choose your own adventure" approach to appellate argument leaves us guessing as to what plaintiffs may have intended. For example, issues (7) through (9) (see *supra*, ¶ 2) might constitute points within an actual argument, but they do not constitute arguments themselves. Moreover, they are neither identified as parts of broader errors in the trial court's judgment nor as bases supporting reversal of the court's decision. Instead, plaintiffs have left it to this court to contextualize any legal analysis they may have performed and to construct a coherent argument for them. This we cannot do. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19 (a reviewing court will not become the advocate for, as well as the judge of, the argument the appellant seeks to make).

¶ 13                    B. Issue (1): *Northwest Millwork*

¶ 14    Plaintiffs' first claim that "the trial court's reliance on [*Northwest Millwork*] is misplaced." This is not an issue on which this case turns. It may be part of some chain of reasoning, but plaintiffs fail to indicate how this proposition might fit into a larger argument.

¶ 15    Laying aside the lack of context to plaintiffs' claim on whatever point this is intended to support, plaintiffs' analysis is, by its own terms, fatally flawed. Plaintiffs argue that *Northwest Millwork* was decided before a 2006 amendment to section 5 of the Act. Before the amendment, section 5 of the Act (770 ILCS 60/5 (West 2002)) provided:

> "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath

or verified by affidavit, of the names and addresses of all parties furnishing materials and labor and of the amounts due or to become due to each."

¶ 16    At the time plaintiffs and JB Architecture entered into the agreement to provide an addition to the subject property, section 5(a) of the Act (770 ILCS 605(a) (West 2020)) provided:

> "It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work and of the amounts due or to become due to each."

¶ 17    Plaintiffs do not argue that the amendment to section 5 was significant to any issue in this case or changed JB Architecture's responsibility as to the information it was required to provide, either the warning that is required to be placed on the contract or the obligation to provide a sworn statement before any payment is sought. Plaintiffs do not even contend that, because the version of the Act effective when *Northwest Millwork* was decided was superseded by the 2006 amendment, *Northwest Millwork* no longer provided guidance and should not be followed. In fact, plaintiffs cite no authority for the proposition that the failure to provide a sworn contractor's statement invalidates any subsequent mechanics lien. Thus, plaintiffs never state *why* the trial court should not have relied on *Northwest Millwork*, and why that case fails to provide guidance for the court's decision in this case, all of which run afoul of the requirements of Supreme Court Rule 341(h)(7), requiring an appellant to provide citation to authority to support its argument. See *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL

124019, ¶ 48 (bare contentions unsupported by relevant authority or analysis deemed forfeited under Rule 341(h)(7)).

¶ 18    Even so, plaintiffs overlook the fact that a simple statutory violation, such as not including required language in a contract, or failing to provide a sworn statement, does not automatically result in the invalidation of the contract or the lien. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 294 (2010). As *Northwest Millwork* recognized, strict compliance did not always result in the invalidity of a lien in every circumstance—some leeway had begun to creep into the Act's interpretation. *Northwest Millwork*, 338 Ill. App. 3d at 1001. The sworn-statement requirement of the Act protects the owner from paying the general contractor, and then being obligated to pay the subcontractors should the general fail to pay them what they are owed. *Id.* As early as 1986, courts had begun to fashion a rule that the owner was required to request a sworn statement before the contractor's failure to provide such a statement would automatically defeat the contractor's mechanics lien claim. *Id.* (citing *Abbott Electrical Construction Co. v. Ladin*, 144 Ill. App. 3d 974, 979 (1986)). The development and implementation of this rule, however, was not straightforward. *Malesa v. Royal Harbor Management Co.*, 187 Ill. App. 3d 655, 660 (1989) rejected the principle that a contractor's lien would not be invalidated if it did not provide a sworn statement without first being requested to do so.

¶ 19    *Northwest Millwork* distinguished *Malesa* because the owners in *National Millwork* were aware of the benefit to their property, they were not subject to any claims from subcontractors as the work had been completed, and they had not claimed any prejudice accruing from the failure to present the sworn statement. *Id.* at 1002-03. Thus, *Northwest Millwork* held that it would be inequitable to bar the claims at issue, breach of contract and lien foreclosure, based on the contractor's failure to provide a sworn statement pursuant to section 5 of the Act. *Id.* at 1003.

¶ 20     We note that plaintiffs do not take a position here, beyond the statement that the trial court's reliance on *Northwest Millwork* was "misplaced." Plaintiffs do not analyze either section 5 of the Act, the import of the 2006 amendment, *Northwest Millwork* itself, or *Malesa* itself. Instead, because plaintiffs say that the lien should be held to be invalid because JB Architecture did not provide a sworn statement, plaintiffs apparently wish us to follow *Malesa*. We recognize that our supreme court in *K. Miller Construction*, 238 Ill. 2d at 294, endorsed the analysis employed in *National Millwork*—the effect of a statutory violation should be determined in light of the facts and circumstances present. Plaintiffs do not conduct such an analysis and focus almost solely on JB Architecture's uncontested failure to provide the sworn statement. We believe that *Northwest Millwork* provides a better framework to consider the claims in this case and, in light of plaintiffs' many shortcomings in presenting this claim, we choose to follow it and agree that *Malesa* is distinguishable for the reasons stated in *Northwest Millwork*, 338 Ill. App. 3d at 1002-03.

¶ 21                    C. Issue (2): Consumer Rights Brochure

¶ 22     Plaintiffs next claim that defendants' failure to provide the "required consumer rights brochure" renders the mechanics lien invalid. Again, this claim appears, at best, to be part of the chain in reasoning to some larger issue, but it fails to relate the statutory requirement to provide a consumer rights brochure in a construction contract to the claimed mechanics lien here. Plaintiffs also provide no citation to authority—apparently this claim is simply to establish that no consumer rights brochure was provided by defendants, and this was not a disputed factual issue at the trial or throughout the case.

¶ 23                 D. Issue (3): Applicability of Act's Sworn-Statement Requirement

¶ 24     In this claim, plaintiffs provide support for the proposition that a contractor's failure to provide a property owner with a sworn statement before recording a mechanics lien against the owner's property serves to defeat both the mechanics lien and any breach of contract claim by

citing to sections 1 and 5 of the Act (770 ILCS 60/1, 5 (West 2020)) and the cases of *Malesa* and *Ambrose v. Biggs*, 156 Ill. App. 3d 515 (1987). Section 1 of the Act defines who is considered to be a contractor (a party who makes an agreement with a real property owner to improve the real property) and what constitutes improvement to real property and is, therefore, lienable. 770 ILCS 60/1 (West 2020). Section 5 sets forth the contractor's duty to provide a sworn statement listing the names of all subcontractors and materialmen providing materials and labor and the amounts due or estimated to come due for those services. *Id.* § 5. According to plaintiffs, these sections impose conditions precedent to receiving payments for improvements to the owner's real property. Plaintiffs cite *Malesa* for the proposition that "a contractor's failure to provide an owner with the sworn statement required by section 5 of the Act precludes recovery by the contractor in a breach of contract action against the owner." *Malesa*, 187 Ill. App. 3d at 658 (citing *Ambrose*, 156 Ill. App. 3d at 518). Plaintiffs also cite *Ambrose*, upon which *Malesa* relied for its holding.

¶ 25 Any argument that can be discerned in this issue, however, is woefully incomplete. Plaintiffs do not discuss the facts of this case and how those facts might be applied. Plaintiffs do not analyze and attempt to distinguish any authority contrary to *Malesa* and *Ambrose*. Plaintiffs do not provide any rationale why *Malesa* and *Ambrose* are better reasoned than any contrary authority, or why *Malesa* and *Ambrose* better fit the facts of this case. In short, plaintiffs simply do not draw a reasoned or minimally plausible argument. Instead, they present citation to the Act and to *Malesa* and *Ambrose* in lieu of any cohesive and coherent argument on whether JB Architecture's failure to provide a sworn statement pursuant to section 5 of the Act should defeat its claim for breach of contract and its mechanics lien.

¶ 26 As we discussed in Section B above, our supreme court recognized that the fact that a party violated a statutory requirement does not automatically render a contract unenforceable—the circumstances of the case must be considered. *K. Miller*, 238 Ill. 2d at 294. Moreover, *Malesa*

and *Ambrose* were distinguished by *Northwest Millwork*, 338 Ill. App. 3d at 1003. *Northwest Millwork* also made a point to account for the circumstances of the individual case, such as the owner's awareness of the benefit to its property, whether the owner was subject to any claims from subcontractors, whether the work had been completed, and whether the owner had claimed any prejudice accruing from the contractor's failure to present the sworn statement regardless if a request for it had been made. *Id.* at 1002-03. By ignoring this authority and failing to consider how and whether it is sufficient to undermine their reliance on *Malesa* and *Ambrose*, plaintiffs do not really provide a valid, cohesive, and coherent argument as contemplated by Rule 341(h)(7).

¶ 27   Thus, as noted, we believe that *Northwest Millwork* provides a better-reasoned and more practical rubric for handling cases in which a contractor has not provided a sworn statement pursuant to section 5 of the Act, especially (as the trial court here found) where the owner has not requested it. Even if plaintiff had made a sufficient argument under Rule 341(h)(7), we would reject it because plaintiffs did not consider how the facts of this case should be applied, and they did not analyze the meaning of their chosen authority and why it is superior to any contrary or distinguishing authority. In short, plaintiffs failed to minimally provide an explanation to support their claim, let alone a persuasive explanation.

¶ 28        E. Issue (4): Required Terms Missing from Construction Agreement

¶ 29   Plaintiffs claim that the construction agreement with JB Architecture did not contain the notices required pursuant to section 5 of the Act (770 ILCS 60/5 (West 2020)). This factual matter was uncontested throughout the case and JB Architecture admitted it did not include the section 5 notices. Plaintiffs then assert that the "failure to provide the statutory written notice must result in the denial of mechanics lien rights to the contractor." Plaintiffs neither provide analysis, argument, nor authority to support this naked conclusion. As such, the assertion violates Rule 341(h)(7). *Walker v. Shults Auto Sales, Inc.*, 2025 IL App (2d) 240459, ¶ 43.

¶ 30    We recognize that plaintiffs' assertion in this section could be a part of the reasoning to support a broader issue, such as the trial court erred in some (undisclosed by plaintiffs) fashion. Since, however, plaintiffs have not seen fit to disclose that broader issue, we are left to guess at what plaintiffs intend, construct our own framework within which to fit the bits and pieces of analysis plaintiffs have provided, and work those disparate and disjointed parts into a coherent and cohesive whole.  This is beyond our purview.  *Gakuba*, 2015 IL App (2d) 140252, ¶ 19 (a reviewing court will not both construct and adjudicate the argument the appellant seeks to make).

¶ 31                     F. Issue (5): Strict Compliance with the Act

¶ 32    Plaintiffs' next claim consists of three conclusions.  First, every provision of the Act " 'becomes a term of every construction contract between the owner and the contractor for construction of a building.' "  *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 487-88 (1999) (quoting *J & K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 673 (1983).  Second, citing nine cases, which we consider below, plaintiffs state that contractors must provide prompt notice according to the strictures of the Act, and must employ "strict adherence to the technical requirements for documents employed to assert, perfect and enforce the rights granted by the Act in derogation of the common law."  Plaintiffs' third conclusion relies on *Ronning Engineering Co., Inc. v. Adams Pride Alfalfa Corp.*, 181 Ill App. 3d 753, 758-59 (1989), and proposes that "[r]ecording a lien absent strict compliance with the Act defeats the enforceability of the purported lien" and defeats the lien-foreclosure count in defendants' counterclaim.

¶ 33    These three points are naked conclusions, not in the sense that they are unsupported by citation to authority, but in the sense that they are divorced from any sort of discussion that leads to each conclusion.  The first point seems unrelated to the other two; the second and third points are colorable statements of the law insofar as they are supported by citation to authority.  Yet, they

are all made without any context and without any relation to the facts of this case. Once again, plaintiffs leave us to construct an argument on their behalf that will incorporate these points. Once again, we decline. *Gakuba*, 2015 IL App (2d) 140252, ¶ 19 (a reviewing court will not both construct and adjudicate the argument the appellant seeks to make).

¶ 34    The first point, that the provisions of the Act are incorporated into agreements to modify real property between contractors and owners, appears to be unexceptionable. We can assume that there is a purpose for its inclusion, but without providing a coherent argument into which this point fits, we are left only to guess what that purpose may be.

¶ 35    The second point is a bit more problematic. Plaintiffs assert that the Act is to be strictly construed in all respects in order for a contractor to be able to enforce a mechanics lien. But what does strict construction mean? It is true that, because the Act is in derogation of the common law, courts have required strict compliance with its terms to perfect a lien under the Act. *Northwest Millwork*, 338 Ill. App. 3d at 1000. However, once the lien is perfected, the Act is liberally construed to accomplish its remedial purpose. *Id.* Plaintiffs do not elaborate on their point, either to contextualize its application to the facts of this case or even to explain what each of the cases cited in support bring to the table.

¶ 36    Instead, plaintiffs simply string-cite nine cases in support of their proposition that the Act requires strict adherence. They omit both pinpoint citations and explanations of each case; likewise, they do not indicate which sections of the Act are at issue in the cases beyond the naked conclusion that strict adherence to the technical requirements of the Act is required before a lien can be enforced. We observe that citing "numerous authorities in support of the same point is not favored" (Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)), and pinpoint citations should be given (Ill. S. Ct. R. 6 (eff. July 1, 2011)). Despite the insufficiency of the presentation of this portion of

plaintiffs' argument, we consider the nine cases they have cited to support their "strict adherence" claim.

¶ 37    In *First Federal Savings & Loan Ass'n of Chicago v. Connelly*, 97 Ill. 2d 242, 246 (1983), our supreme court held that a lien pursuant to the Act "is valid only if each of the statutory requirements is scrupulously observed. Once the contractor has complied with the statutory prerequisites, however, the [Act] should be liberally construed in order to carry out its remedial purpose." Substantively, the case involved section 7 of the Act (currently codified 770 ILCS 60/7 (West 2022)), dealing with the requirements of the claim for lien, notice to third parties, and multiple parcels. *Connelly*, 97 Ill. 2d at 246-47. Plaintiffs do not comment on whether or how a case dealing with section 7 is to be applied to the circumstances here, in which a section 5 sworn notice was not produced by the contractor.

¶ 38    In *Pittsburgh Plate Glass Co. v. Kransz*, 291 Ill. 84, 89-90 (1919), our supreme court dealt with the question of when the lien was created—at the time of contracting or at the time notice was given. The question arose because the contractor had gone bankrupt after subcontractors had provided materials and labor, but before they filed their liens. *Id.* at 89. The court held that the lien was created at the time of contracting, and it was perfected upon the provision of notice compliant with the requirements of the Act. *Id.* at 90 ("The lien given by the statute exists from the date of the original contract, but notice of the claim of lien must be given within the time required by statute to preserve and enforce it"). The case then discusses lien priority among various creditors to the bankrupt contractor, and plaintiffs do not explain whether, or if, this discussion affects this case's applicability to the fact presented here.

¶ 39    In *Cityline Construction Fire & Water Restoration, Inc. v. Roberts*, 2014 IL App (1st) 130730, ¶ 10, the court noted that it was "well established that the Act must be strictly construed with respect to all the statutory requirements upon which the right to a lien depend," as well as the

"technical and procedural requirements necessary for a party to invoke the benefits of the Act." There, the court was deciding the viability of the contractor's argument that it complied with the purpose of the Act if not its strict terms where it failed to provide a sworn statement, but the subcontractors had all been paid, and the owners were not prejudiced by the lack of a sworn statement. *Id.* ¶ 12. The court held that the lien was invalid because, "regardless of equitable considerations, the rights created under the Act are in derogation of the common law and therefore the procedural and technical requirements of section 5 of the Act must be strictly complied with in order for a mechanic's lien to be valid." *Id.* ¶ 17. The court further noted that, notwithstanding the invalidity of the lien, the contractor's claims for *quantum meruit* and breach of contract survived against the owners. *Id.* ¶ 19. Once again, plaintiffs offer no further analysis to suggest how this case may apply under the circumstances presented here.

¶ 40 In *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 516 (2009), we noted that the Act's purpose was to allow a contractor to place a lien upon real property where the owner has received a benefit and the property's value has been improved or increased by the furnishing of labor or materials. Because the Act creates statutory rights in derogation of the common law, "the technical and procedural requirements necessary for a party to invoke the benefits of the Act must be strictly construed." *Id.* In that case, the owner requested a sworn statement, and the contractor provided a statement that had not been properly notarized. *Id.* at 517. We held that the statement did not comply with section 5 of the Act and, therefore, the lien was invalid. *Id.* at 520-21. Plaintiffs did not comment on how the trial court's factual determination that they did not request a sworn statement impacts the guidance *Weydert Homes* might offer.

¶ 41 Plaintiffs cite *Northwest Millwork*, 338 Ill. App. 3d at 1000, for the proposition that "the rights under the Act are in derogation of the common law, [and] the steps necessary to invoke those rights must be strictly construed." We have extensively discussed this case above and note

that we held that, because the owners did not request a sworn statement pursuant to section 5 of the Act, the contractor's failure to provide the sworn statement did not defeat either its mechanics lien claim or breach of contract claim. *Id.* at 1003. Plaintiffs do not distinguish *Northwest Millwork*, and, as noted, the trial court's determination relied on it to find that neither the lien nor the contract were invalidated by the failure to provide a sworn statement. If, as they apparently do, plaintiffs endorse *Northwest Millwork* without limitation, then it solidly undercuts their (presumed) position.

¶ 42    In *Prior v. First Bank & Trust Co. of Mount Vernon*, 231 Ill. App. 3d 331, 332-33 (1992), the court noted that the Act was in derogation of the common law so the Act's requirements must be strictly construed, and the contractor must strictly follow the Act's requirements enforce a mechanics lien. In that case, the contractor did not provide a sworn statement pursuant to section 5, and the owner did not request the statement; the court held that the lien claim could proceed under the circumstances. *Id.* at 333. This case, too, is contrary to plaintiffs' position.

¶ 43    In *Edward Electric Co. v. Automation, Inc.*, 164 Ill. App. 3d 547, 551 (1987), the court rejected the enforceability of a subcontractor's lien against the owner's property. The court noted that, to perfect such a lien, the subcontractor had to strictly comply with the relevant provisions of the Act, but in that case, had not complied with the provisions governing the time limits for supplying notice to the owner. *Id.* This case did not involve section 5 of the Act. *Id.* at 549.

¶ 44    *Steinberg v. Chicago Title & Trust Co.*, 142 Ill. App. 3d 601, 605 (1986), discussed that mechanics liens were not recognized at common law or in equity. Instead, they were wholly statutory creations, and, for that reason, are strictly construed and their validity is established only if the statutory requirements are strictly observed. *Id.* The court held that, because the description of the real property was deficient, the lien was unenforceable. *Id.* at 607.

¶ 45    Plaintiffs last cite *Sanaghan v. Lawndale National Bank*, 90 Ill. App. 2d 254, 259 (1967), which involved a subcontractor to a subcontractor seeking to enforce a lien against the owner of real property for providing drywall services and materials that the subcontractor did not properly report.  The sub-subcontractor did not file a notice of lien directly with the owner, and the lien was held to be invalid, because the owner complied with its duties under the Act.  *Id.* at 261.

¶ 46    The cases cited by plaintiffs illustrate that the Act will be strictly construed, and contractors are held to strictly comply with the Act's terms in perfecting their liens.  Against this strict-compliance requirement, *Northwest Millwork*, 338 Ill. App. 3d at 1003, demonstrates that courts are unwilling to let the Act be used as a sword instead of a shield, and where an owner has not requested a sworn statement, the contractor's failure to provide a sworn statement may not, depending on the circumstances, render the lien unenforceable.

¶ 47    Plaintiffs rely on *Ronning Engineering*, 181 Ill. App. 3d at 758-79, to support the proposition that, absent strict compliance, a mechanics lien will be deemed unenforceable.  In that case, the contractor's lien violated the requirement that the lien include a brief statement of the contract on which it was based when the contractor described the wrong contract with a different party.  *Id.* at 759.  *Ronning Engineering* has been distinguished more recently, however, on the grounds that the brief-statement-of-contract provision in the Act (see 770 ILCS 60/7 (West 2022)) requires the description of the contract simply to be sufficient and not absolutely correct.  *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 141.

¶ 48    As discussed above, in the absence of a clearly identified issue or clear, cohesive, and coherent argument, plaintiffs' conclusions afford little meaning.  It is true that a contractor must strictly comply with the Act to perfect a lien, but in the absence of analysis of the facts bearing on how the lien may have been perfected, we are left with nothing to evaluate.  Plaintiffs have steadfastly refused to provide analysis or coherent argument to allow us to evaluate their claims,

instead leaving it for us to make the argument on their behalf and then to adjudicate the argument we have made. This is improper. *Gakuba*, 2015 IL App (2d) 140252, ¶ 19.

¶ 49          G. Issue (6): Plaintiffs Effectively Requested a Sworn Statement

¶ 50    Plaintiffs next claim that they "effectively asked" for a sworn statement pursuant to section 5 of the Act. Plaintiffs reference an April 14, 2021, email requesting "to see the cost breakdown of the project." Plaintiffs explained their understanding that the total project cost of $157,900 was comprised of an accumulation of bids JB Architecture "collected for each segment," and they wished to see a new breakdown because "some aspects of those bids have changed based on upgrades with the foundation and windows." Plaintiffs further explained that they wished for an updated breakdown to help with their decision-making moving forward. It is undisputed that JB Architecture never provided a sworn statement of subcontractors.

¶ 51    The trial court determined, as a factual matter, that plaintiffs "never requested a section 5 sworn statement. Plaintiffs clearly did request a cost breakdown of the project, but they never asked for the names or identities of any subcontractors," and "[n]othing in evidence suggest[ed] they ever asked [JB Architecture] to disclose, or did anything sufficient to imply they desired to ascertain, the identity of" the subcontractors supplying labor, services, and materials. Rather, the evidence showed that plaintiffs "were only ever interested in calculating and re-negotiating the total cost of the project."

¶ 52    Plaintiffs do not challenge the trial court's factual determination. Instead, they assert only that they "effectively" requested the section 5 sworn statement. Plaintiffs do not provide argument, analysis, or citation to relevant authority concerning what constitutes a sufficient request for a section 5 sworn statement, and they do not provide argument, analysis, or citation to relevant authority about whether the trial court's determination was against the manifest weight of the

evidence. In the complete absence of argument and authority, this claim is forfeited. Ill. S. Ct. R. 341(h)(7).

¶ 53        H. Issue (7): Defendants Did Not Provide Statutory Sworn Statement

¶ 54    Plaintiffs claim that defendants did not provide a sworn statement pursuant to section 5 of the Act. This factual matter was undisputed at trial, and the trial court determined that defendants had indeed never produced a sworn statement to plaintiffs. Plaintiffs do not, however, incorporate this fact into an issue or argument. This uncontested fact simply stands alone, waiting for this court to figure how to best deploy it in an argument we might think plaintiffs intended to make. This we may not do. *Gakuba*, 2015 IL App (2d) 140252, ¶ 19.

¶ 55        I. Issue (8): Defendants Continue Not to Provide Sworn Statement

¶ 56    Plaintiffs claim that defendants continue to "adamantly refuse to produce a proper sworn statement" pursuant to section 5 of the Act. Again, this assertion was uncontested at trial or throughout the proceedings. Plaintiffs again do not suggest how this fact should be used in any argument or analysis, and we may not construct an argument and utilize this fact on their behalf. *Gakuba*, 2015 IL App (2d) 140252, ¶ 19.

¶ 57                    J. Issue (9): Lien Invalidity

¶ 58    Plaintiffs claim that, by not providing them with a sworn statement pursuant to section 5 of the Act, both defendants' mechanics lien claim and breach of contract claim are invalid. This presents something closer to a traditional appellate argument as contemplated by Rule 341(h)(7) but fails to provide a thorough treatment of the issue. Plaintiffs take the undisputed fact that defendants did not provide a sworn statement and rely on *Malesa* and *Ambrose* for the proposition that defendants' lien is invalid because it was recorded before defendants produced the required section 5 sworn statement. We must note, however, that, beyond bare citation to the cases, plaintiffs do not analyze the holdings in the cases, either with regard to the facts presented at trial

or with regard to the trial court's resolution of the issue. In no real sense, then, have plaintiffs presented an argument as contemplated by Rule 341(h)(7).

¶ 59　Laying that to the side, we note that *Malesa* indeed held that, even in the absence of a request for a sworn statement, a contractor had a duty to provide one. *Malesa*, 187 Ill. App. 3d at 660. *Ambrose*, by contrast, did not decide a lien-validity issue because the claim before it was for a breach of contract. *Ambrose*, 156 Ill. App. 3d at 518. *Ambrose* is inapposite to the issue of the validity of defendants' lien, but applicable to the issue of defendants' claim of breach of contract.

¶ 60　Regarding the lien, we note that *Northwest Millwork* ultimately followed *Abbott Electrical*, 144 Ill. App. 3d 974, 979 (1986), which also held that the failure to provide a sworn statement where the owner had not made a request does not invalidate the contractor's mechanics lien. *Northwest Millwork*, 338 Ill. App. 3d at 1003. *Northwest Millwork* also considered the factual circumstances, finding it important that the owners could not be made to pay twice because the work had been completed, the owners allowed the work to be performed and were aware of the benefit to the property they were receiving. *Id.*

¶ 61　Here, the trial court determined that, pursuant to *Northwest Millwork*, for plaintiffs to defeat the lien claim, they would have to show they requested the sworn statement, defendant did not provide the statement, and they were either prejudiced by the lack of a sworn statement (such as through liability to pay the subcontractors after paying the contractor) or unaware of any benefit accruing from the work performed. The court determined there had been no request for a sworn statement, and plaintiffs were aware of the benefits to their property's value resulting from the improvements defendants made. Based on these facts, we agree with the court's determination that *Northwest Millwork* fits the particular facts of this case.

¶ 62　Similarly, *Northwest Millwork*, 338 Ill. App. 3d at 1003, also held that the failure to provide the sworn statement did not preclude the contractor's breach of contract claim, distinguishing

*Ambrose*. For the same reasons, we believe *Northwest Millwork* to better fit the circumstances of the case, and the trial court properly relied on it and distinguished *Ambrose*. To the extent, therefore, that plaintiffs stated a minimally viable argument (although we do not believe this to be the case), we reject it.

¶ 63       K. Issue (10): JB Architecture Offered No Evidence of Value Enhancement

¶ 64    Plaintiffs next claim that JB Architecture offered no evidence of benefit to the property through enhancing its value. Plaintiffs cite no authority in support of their position, thus running afoul of the requirements of Rule 341(h)(7). In contrast, the trial court determined, through unrefuted evidence presented at trial, that the value claimed was the exact amount JB Architecture paid to the construction manager to provide the work for the project, and it determined that defendant offered evidence that the claimed construction costs and services were "substantially and beneficially provided and performed in a good and workmanlike manner." Plaintiffs do not analyze, or even admit, that the trial court's factual determinations could potentially prove problematic for their unsupported and unexplained claim that no evidence of value enhancement appears in the record.

¶ 65       L. Issue (11): Lien Invalidity Based on Lack of Evidence of Amount Claimed

¶ 66    Similarly to the preceding issue, plaintiffs next claim that defendants could not explain how they arrived at the amount claimed in the lien. The trial court noted that defendants presented evidence that tied the amounts claimed by defendants to amounts expended on materials and labor. Plaintiffs do not challenge this finding; likewise, they provide no citation to authority or argument to otherwise challenge the claimed amount. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). To the extent that this constitutes an even minimally viable argument, we reject it.

¶ 67             M. Issue (12): Lien Invalidity Based on Licensure

¶ 68    Plaintiffs argue[2] that, because JB Architecture was not licensed by the Village, its lien is invalid.  Plaintiffs argue that, for a mechanics lien to be enforceable, the lien claimant must be validly and currently licensed to perform the work for which the lien is asserted.  Village ordinance requires a building contractor's license to perform construction work within the Village.  See Montgomery Municipal Code, § 6-97 (adopted Feb. 23, 2004).  Plaintiffs argue that, in the construction contract, JB Architecture agreed to "furnish all materials and perform all the labor" for the improvements to the real property.  Plaintiffs contend that, because it promised to furnish material and labor, JB Architecture is subject to the Village's licensure requirement.  Plaintiffs further contend that JB Architecture did not possess and did not apply for a building contractor's license.  Because JB Architecture held itself out as a general building contractor when it entered into the agreement with plaintiffs, the contract is illegal and invalid, thereby rendering the any lien based on the contract invalid.

¶ 69    In support, plaintiffs rely on *G.M. Fedorchak & Associates, Inc. v. Chicago Title Land Trust Co.*, 355 Ill. App. 3d 428, 432 (2005), which considered whether the plaintiff architectural firm had the legal capacity to foreclose its mechanics lien for architectural services.  The plaintiff firm consisted of two architects: one whose license was inactive at the time of contracting and the other who became licensed after the contract was entered into; the firm itself was not registered under the State architectural licensing statute.  *Id.* at 434.  The court held that it had to consider the licensure status at the time the contract was executed and, because neither the firm nor the architects held valid licenses when the contract was executed, the purpose of the licensing statute

---

[2]Hitherto we have avoided characterizing any of plaintiffs' issues as an "argument," based upon the failings identified above and throughout our analysis.  In this issue, plaintiffs have adequately—just—sketched an issue and argument for our consideration.

was not satisfied. *Id.* The court held that the contract for architectural services between the plaintiff and the owner was thus void, because no architect was licensed to practice, and the mechanics lien based on the void contract was itself invalid. *Id.* at 434-35. The court concluded that the plaintiff lacked the legal capacity to foreclose the mechanics lien for architectural services. *Id.* at 435.

¶ 70 Plaintiffs do not refer to the trial court's ruling in making their argument—an important oversight, as the court expressly noted that:

> "The undisputed facts in evidence reveal that: 1) [Bieritz] was a licensed architect at all relevant times, 2) that [JB Architecture] employed a licensed general contractor to perform general contracting services on behalf of Defendant in furtherance of the contract, 3) the Village of Montgomery imposed a requirement to hold a general contractor's license, 4) the entity employed by [JB Architecture] to perform general contracting services held the requisite general contractor's license at all relevant times, [5)] the Village of Montgomery did not require [JB Architecture] to hold a general contractor's license to perform the underlying contract, [6)] no evidence was offered suggesting [JB Architecture's] performance of the contract was illegal or contrary to public policy."

We have reviewed the record and determine that the court's factual recitation is reasonable and fully supported by the testimony at trial.

¶ 71 Compounding the court's recitation of undisputed facts, we note that *G.M. Fedorchak* did not follow the principle that plaintiffs advocate here. Plaintiffs rely on *G.M. Fedorchak* for the proposition that courts will not enforce a contract involving a party who does not have the required license. Contrary to plaintiffs' representation, *G.M. Fedorchak* disagreed with that principle. *Id.* at 433 (refusing to follow *Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320, 324 (1995) (holding that it would not enforce a contract involving a party who does not have license required

by public-protection legislation, as opposed to a revenue measure)). Instead, *G.M. Fedorchak* stated that, had either of the individual architects in the firm held a valid license at the time the contract was executed, the contract would have been valid notwithstanding the firm's failure to hold a valid registration, because the work would have been supervised by a licensed architect. *Id.* at 434. Rather than defeating the validity of JB Architecture's lien, *G.M. Fedorchak* supports the validity of the lien because the building contractor's work had indeed been done by a licensed building contractor.

¶ 72 Plaintiffs' argument is thus rebutted by the undisputed facts of this matter. Moreover, plaintiffs misconstrue the legal authority they cite, and, properly understood, that authority rebuts plaintiffs' contention and supports the lien's validity. Therefore, we reject plaintiffs' licensure contention because, under the circumstances presented here, the work was performed under the supervision of a properly licensed building contractor.

¶ 73                           N. Issue (13): Slander of Title

¶ 74 Plaintiffs claim that JB Architecture's recording of its lien constitutes slander of title. Plaintiffs do not, however, cite any authority bearing on slander of title. The contention is therefore forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 75 Instead of providing argument or authority in support of the purported slander of title issue, plaintiffs offer cases that pertain to quiet-title actions where an invalid lien has been recorded against the subject property: *Koester v. Huron Development Co.*, 25 Ill. 2d 337 (1962), *Crandall v. Sorg*, 198 Ill. 48 (1902), *Franklin Savings Bank v. Taylor*, 131 Ill. 376 (1890), and *Caruso v. Kafka*, 265 Ill. App. 3d 310 (1994). Plaintiffs assert that the issues they attempted to argue in their brief provide "multiple independently sufficient reasons [JB Architecture's] lien was invalid, and therefore illegally recorded, and judgment in favor of [plaintiffs] and against [JB Architecture]

should have been entered on [plaintiffs'] Count to Quiet title [*sic*], directing [JB Architecture] to record a release of its purported lien against [the subject property]."

¶ 76    Plaintiffs have failed to demonstrate above that JB Architecture's lien was invalid.  It is virtually axiomatic that a valid interest in property cannot constitute a cloud on title.  *Englewood Construction, Inc. v. J.P. McMahon Properties, LLC*, 2025 IL App (3d) 240389, ¶ 80.  Thus, if a party holds a valid mechanics lien, the lien cannot be an improper cloud on title, and any quiet-title claim must necessarily fail.  *Id.*  Because plaintiffs have failed to demonstrate that the lien is invalid, their quiet-title claim fails.

¶ 77                                      III. CONCLUSION

¶ 78    For the foregoing reasons, we dismiss in part this appeal and affirm in part the judgment of the circuit court of Kendall County.

¶ 79    Appeal dismissed in part, judgment affirmed in part.